(609 P.2d 1171)
No. 50,605
STATE OF KANSAS, *Appellee,* v. JESSE HAMMOND, *Appellant.*
Petition for review denied June 20, 1980.

Opinion filed April 25, 1980.

Steven L. Opat, of the public defender's office, of Junction City, for appellant.

Keith D. Hoffman, county attorney; and Robert T. Stephan, attorney general, for appellee.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

MEYER, J.: This is an appeal from a criminal conviction by a jury of robbery (K.S.A. 21-3426), and unlawful restraint (K.S.A. 21-3424).

Jesse Hammond (appellant) and an unknown individual went to a rural residence the morning of October 25, 1977. The two State's witnesses testified that they were held at gunpoint. Gary D. Riekeman was robbed of a certain amount of cash at two different times, once by the appellant and once by the accomplice. The State's witnesses further testified that they were taken from the residence at gunpoint, and one was confined in a cellar located a few feet to the north of the residence.

Appellant testified that he was at the residence but denied any involvement in a robbery or in any other criminal activity. He admitted that the other individual was armed with a pistol, but denied that he was in any way involved.

Appellant was arrested and charged with aggravated robbery, kidnapping, aggravated battery, aggravated assault and aggravated burglary. The aggravated assault charge was dismissed for being multiplicitous.

Appellant filed two motions to dismiss on the basis that the complaint was conclusory and did not give sufficient facts for the magistrate judge to make an independent finding of probable cause. The motions were denied.

At trial, appellant moved to dismiss the robbery count as being duplicitous as two offenses were charged in one count. This motion was also denied.

Appellant first complains that the court committed error in refusing to grant his motion to dismiss for failure of the complaint to provide underlying facts and circumstances so that the magistrate could find probable cause for issuance of the arrest warrant.

Appellant filed two motions to dismiss. The first motion was heard and denied by the district magistrate judge immediately prior to appellant's preliminary hearing. Denial of this motion was before Wilbanks v. State, 224 Kan. 66, 579 P.2d 132 (1978),

was handed down. His second motion to dismiss was filed after *Wilbanks* was handed down. This motion was denied by the district judge.

The holding in *Wilbanks,* insofar as applicable here, was as follows:

"Before a warrant for arrest or search may be issued, there must be a finding of probable cause by a neutral and detached magistrate." 224 Kan. 66, Syl. ¶ 1.

And further,

"A verified complaint couched in the language of the criminal statute, standing alone, is not sufficient to support a finding of probable cause. A complaint should contain sufficient factual information to enable the magistrate to make an impartial and detached finding of probable cause before a warrant is issued." 224 Kan. 66, Syl. ¶ 4.

Our Supreme Court in *Wilbanks* followed the precedent set by the United States Supreme Court in *Giordenello v. United States,* 357 U.S. 480, 2 L.Ed.2d 1503, 78 S.Ct. 1245 (1958), and *Whiteley v. Warden,* 401 U.S. 560, 28 L.Ed.2d 306, 91 S.Ct. 1031 (1971).

Appellant's argument is that the illegal arrest was sufficient justification for dismissal of the charges against him, but we find no case which would support this conclusion. None of the cases above stand for the proposition that an illegal arrest and detention vitiates a subsequent conviction. See *United States v. Crews,* _____ U.S. _____, _____, 63 L.Ed.2d 537, 100 S.Ct. 1244 (1980) (citing from *Gerstein v. Pugh,* 420 U.S. 103, 119, 43 L.Ed.2d 54, 95 S.Ct. 854 [1975]), where the court said:

"[R]espondent . . . cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."

It is not the illegal arrest and restraint, per se, which causes a conviction in violation of the above cases to be set aside, although same might well give rise to a valid writ in habeas corpus. The effect of *Giordenello* and *Whiteley* are that these cases preclude the use of evidence seized incident to such an illegal arrest. Thus, these cases hold that evidence seized at the time of an unlawful arrest is inadmissible as evidence. They do not, as aforesaid, stand for the proposition that the defendant cannot be prosecuted.

The arrest warrant of the appellant herein was admittedly based upon a complaint couched in the terms of the statute and the judge issuing such warrant lacked sufficient information to

make an independent determination of probable cause. However, it is not contended that any evidence was seized or brought to light by reason of the arrest. Furthermore, the preliminary hearing was held immediately following the motion to dismiss and a finding of probable cause at that hearing made appellant's continued detention legal.

In *State v. Addington,* 205 Kan. 640, 644, 472 P.2d 225 (1970), the court said:

"The law is well settled that jurisdiction of a court to try a person accused of a crime is not divested by the fact he may have been unlawfully arrested."

Again, in *State v. Kearns,* 211 Kan. 158, 162, 505 P.2d 676, *cert. denied* 414 U.S. 841 (1973), the court said:

"Whatever its deficiencies, the complaint had spent its force when a preliminary hearing was held and the magistrate made the necessary findings to bind appellant over for trial."

It is true that our Supreme Court in *Wilbanks* stated, "To whatever extent those cases are inconsistent with the views hereafter expressed, they are disapproved." 224 Kan. at 75. One of the cases there referred to was *Addington;* however, *Wilbanks* was clearly not intended to overrule *Addington* other than as it related to the proposition that a conclusory affidavit was sufficient for a finding of probable cause. We do not interpret *Wilbanks* as overruling the rule regarding jurisdiction to try a defendant.

We commend the granting of an immediate probable cause hearing to prevent further illegal detention, because it is obvious that until the time probable cause was determined the defendant was not properly in custody. Since the court did have jurisdiction to try the defendant, the court did not err in refusing to dismiss the charges.

For the reasons stated above, we conclude there is no merit to appellant's first issue.

Appellant next claims the court erred in denying his motion to dismiss the aggravated robbery count on the grounds that it was duplicitous.

In *State v. Campbell,* 217 Kan. 756, 778, 539 P.2d 329, *cert. denied* 423 U.S. 1017 (1975), the court said:

"The vice of duplicity is that the jury is unable to convict of one offense and acquit of another offense where both are contained in the same count."

The remedy for duplicity was discussed in 1 Wright, Federal Practice and Procedure: Criminal § 145 (1969), p. 335:

"An indictment or information charging two separate offenses in a single count is duplicitous, but this is not fatal, and does not require dismissal of the count. The proper remedy is to require the government to elect upon which charge contained in the count it will rely, and defendant is not harmed if the proof is limited to only one of the charges in the duplicitous count."

Appellant's argument is that he was charged with the robbery of $52, whereas the proof indicated that an accomplice took $12 from the victim at one time and later appellant took $40. Thus, he was charged with two offenses.

First, it should be noted, that whether the amount taken was $12, $40, or $52 is not of great significance. Since the charge was that of robbery, the amount was not crucial, in that the crime would still be that of robbery regardless of the sum taken. Moreover, the prosecution amended its information so that the $52 figure was stricken from the count of robbery. Therefore, the jury had before it only one offense and would not be faced with the dilemma of being unable to convict of one offense and acquit of another.

In addition, we find that the trial court did not abuse its discretion in allowing the amendment before the case was submitted to the jury. Under K.S.A. 1979 Supp. 22-3201(4):

"The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

Such an amendment did not prejudice appellant's rights nor did it charge him with an additional or different crime.

Appellant next complains that the court erred in giving the instruction from PIK Crim. 68.12, the so-called "Allen" charge. (*Allen v. United States,* 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154 [1896]).

The jury retired at 10:35 a.m. and met until 11:55 a.m. when they were excused for lunch. They reconvened at 1:00 p.m. and deliberated until 3:07 p.m. at which time they notified the court they were unable to reach a verdict. Despite the vigorous objection of appellant, the court, at that time, gave the Allen instruction. Just under an hour later the court again summoned the jury, at which time the following transpired:

"THE COURT: Let the record show the presence of the jury, the presence of the defendant, his counsel, and the State's attorney. Mr. Brown, as foreman of the

jury I would like to ask— Now, listen carefully. I don't want you to tell me what the count is; I just want you to tell me whether or not any progress has been made towards an agreement since the last instruction was given to you by three o'clock.

"MR. BROWN: Yes, sir, we have a conviction on the robbery.

"THE COURT: Now, wait a minute, I don't want to know what it is.

"MR. BROWN: I'm sorry.

"THE COURT: You are reporting that you have made progress?

"MR. BROWN: Right.

"THE COURT: Very well, in that event I'm going to let you go back and continue your deliberations and attempt to reach a decision in every count. Now, mind you I say reach a decision for or against, convict or acquit. I'm not saying which way. If you are unable to agree on all of the counts, then you may come in and give your verdict in the counts upon which you have agreed and the other counts will be held as a mistrial. It is not— It is not incumbent upon you to agree on all four. We would like to have that, but it isn't going— we won't throw the case out if you don't. So you apparently have reached some agreement, and I'm going to send you back now and ask that you continue to try to reach a full agreement. Is that clear to everyone on the jury? And those matters that you cannot agree on, then knock and report to the bailiff you cannot agree. Thank you. You may go back now and continue with your deliberations."

Following the above statements of the court, the jury reconvened at 4:15 p.m. and at 4:37 p.m., only 22 minutes later, arrived at its verdicts.

Our Supreme Court has long been critical of the Allen-type instruction. See *State v. Oswald,* 197 Kan. 251, 417 P.2d 261 (1966); *State v. Basker,* 198 Kan. 242, 424 P.2d 535 (1967); *State v. Earsery,* 199 Kan. 208, 428 P.2d 794 (1967); *Bush v. State,* 203 Kan. 494, 454 P.2d 429 (1969); *State v. Scruggs,* 206 Kan. 423, 425, 479 P.2d 886 (1971); and *State v. Boyd,* 206 Kan. 597, 481 P.2d 1015 (1971), *cert. denied* 405 U.S. 927 (1972).

We conclude that the giving of an Allen-type instruction after the jury has deliberated for only 3 hours and 27 minutes, and particularly when the giving of same is objected to, is error. The error is compounded when the court calls the jury back less than one hour later and again prompts them. We do not here intend to set a time within which it would be error to give the Allen instruction, in that in each case it must be discretionary with the trial court. However, we have no hesitancy in saying that the shorter the period of deliberation has been, the more suspect is the giving of the instruction, and the more likely it is that the instruction will be coercive in nature. It may well be that there are cases with issues simple enough that such an instruction would be indicated within a few hours of deliberation; however, the

instant case was not a simple one. We conclude the court abused its discretion.

Not every abuse of discretion, however, and not every error, *is* grounds for reversal. To constitute reversible error, same must be prejudicial when considered in conjunction with all the evidence in the particular case. In the instant case, it is hard to see prejudice since the jury remained deadlocked on two issues and therefore did not indicate coercion by its results. As to the two remaining counts, appellant was convicted of lesser included offenses of each. Considering this, and in view of the compelling, and what we consider overwhelming, evidence in this case, we conclude that the error was not prejudicial and appellant was not deprived of a fair trial.

Appellant's final claim of error is that the trial court denied him a right to a fair trial by its actions, rulings and conduct. One such complaint concerns a discussion between defense counsel and the court in the presence of the jury, as follows:

"THE COURT: If he did, does that make the defendant any less guilty or more guilty if he helped process that marijuana? The fact that this man might be the biggest marijuana dealer west of the Mississippi, does that make—

"MR. OPAT: I'll withdraw the question.

"THE COURT: —make your defendant any less or more guilty? In other words, it's irrelevant whether he harvested the marijuana or whether the pillow fairy brought it in for him."

We do not look with favor on these remarks of the court in the presence of the jury. Nevertheless, we conclude appellant received a fair trial. Among other rulings of the trial court which found in favor of appellant, the court sustained an objection to an inquiry of the victim's (Riekeman's) drug and alcohol use on the evening before the morning of the alleged crimes. Further, the court denied the State the right to inquire into the victim's involvement with an alleged drug rip-off with which appellant was involved. Also, the court admonished the jury to disregard the repartee between himself and counsel as to who harvested the marijuana. The court was within its discretion to exclude such testimony.

In connection with his complaints against the trial court's conduct of the trial, appellant raises the fact that the court questioned an officer to perfect the chain of custody with regard to certain pictures, when appellant objected to improper foundation.

*State v. Boyd,* 222 Kan. 155, 158-9, 563 P.2d 446 (1977), contains the law concerning the problem of a court taking the role of a prosecutor, in the following language:

"We have stated on a number of occasions that the purpose of a trial in a criminal case is to ascertain the truth of the matters charged against the defendant and it is a part of the business of the trial judge to see that this end is attained, even though in accomplishing the full development of the truth it sometimes becomes necessary for him to examine and cross-examine the witnesses. (*State v. Blake,* 209 Kan. 196, 495 P.2d 905; *State v. Jones,* 204 Kan. 719, 466 P.2d 283; *State v. Winchester,* 166 Kan. 512, 203 P.2d 229; *State v. Miller,* 127 Kan. 487, 274 Pac. 245; and *State v. Keehn,* 85 Kan. 765, 118 Pac. 851.) In recognizing the right of a trial judge to cross-examine witnesses we have always coupled such recognition with words of warning. In *State v. Winchester,* supra, we stated that where the judge deems it necessary to cross-examine witnesses, he must exercise great care to prevent giving the jury the impression that he is biased against the defendant and he must not forget the function of a judge and assume that of an advocate. The same rule applies with respect to the credibility of a witness and a judge should exercise great care and caution to say nothing within the hearing of the jury which would give them an indication of what he thought about the truth or falsity of any part of the testimony. This admonition was recently repeated in *State v. Jones,* supra. These admonitions are prompted by the truism that a jury has a natural tendency to look to the trial judge for guidance, and may find it even where it is not intended. The judge's attitude and the result he supposedly desires may be inferred by the jury from a look, a lifted eyebrow, an inflection of the voice—in many cases without warrant in fact. (*State v. Blake,* supra.)

"Since the cross-examination of a witness by a trial judge is fraught with such dangerous consequences, if a trial judge sincerely believes that additional information should be obtained from a witness in order to clarify the evidence and enable the jury to arrive at the true facts, the better practice is for the trial judge to discuss the matter with counsel outside the presence of the jury and request counsel to pose the questions to the witness. Such a procedure will accomplish the full development of the truth without a direct participation by the trial judge in the examination of the witness and hence any question as to the judge's bias may be avoided."

We have carefully reviewed the entire record in this case, and while we disapprove of certain acts and conduct of the trial court, we conclude, in view of all the circumstances, that the appellant received a fair trial and that the conduct of the trial court fails to indicate a bias on its part.

Affirmed.