No. 60,448

STATE OF KANSAS, *Appellee*, v. BILLY JOE ANTHONY, *Appellant*.

(749 P.2d 37)

Opinion filed January 15, 1988.

*Michael S. Holland*, of Russell, argued the cause and was on the brief for appellant.

*Gene Porter*, county attorney, argued the cause and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a direct appeal of a criminal action. Billy Joe Anthony was convicted of class B felony possession of cocaine (K.S.A. 65-4127a). He was sentenced to fifteen years to life imprisonment, the sentence to run consecutive to his previous three-to-ten year sentence for possession of cocaine, pursuant to K.S.A. 1986 Supp. 21-4608(3).

Let us first acquaint ourselves with the facts from which these charges flow. On the afternoon of January 3, 1986, Billy Joe Anthony, on probation for possession of cocaine, was working at his newly opened mechanic's shop. He was visited by his girl-friend, Lois Inks, whom he married before this case came to trial. Ms. Inks told Anthony she was going over to clean the trailer

home in which Anthony lived alone. He gave his consent, stating he might work late.

Inks had earlier agreed to make up some packets of cocaine for a friend of hers. She therefore brought the cocaine and its attendant paraphernalia over to Anthony's house with her cleaning supplies. Both she and Anthony declared Anthony knew nothing of this. They testified Anthony had had nothing to do with drugs since his prior arrest, and would have been angry had he known Inks had brought drugs into the house.

Inks arrived at Anthony's house around 6:00 p.m. Her brother, Jeffrey Inks, came over soon after and asked if she could sell him some marijuana. They smoked some marijuana and used some cocaine. They were visited by two friends of Anthony's who wanted to buy some cocaine, but wanted more than Inks could supply.

Inks then started getting her paraphernalia together in the study to hide before Anthony got home. She was in this room when Anthony got home. Anthony was still in the front room in his coat and hat when the police arrived with a search warrant at 7:21 p.m. Inks and Anthony testified Anthony had been home only a few minutes before the police came and had not seen any of the drugs.

Shortly after the police arrived, Inks emerged from the study about fifteen feet away from Anthony, who was still standing at the front door. She carried two baggies of marijuana, six packets of cocaine, and a $20 bill in her hand. As the police took these items from her, she said, "This is all my stuff, he doesn't know anything about it." Inks later testified she had said "*they* didn't know anything about it," referring to her brother as well, although her previous testimony clearly showed her brother not only knew about the drugs, but was a user with her.

The officers found a bong that smelled of marijuana in a paper sack in a kitchen cabinet. Anthony admitted having seen the bong before. He said a friend had left it there because he was driving home drunk and didn't want to chance its being found by the police if he was stopped. On the kitchen table the police found a $5 bill, a $10 bill, and a white paper partially folded in a pharmacy fold. The table was in clear view, about eight feet from the entrance door.

Other papers commonly used for packaging powdered drugs were on top of a desk in the study. Also on the desk were a mirror, a powder scales, a measuring spoon, "Snuff-It" inhalers, and white paper packets containing cocaine. Although neither Anthony nor Inks had children, there was a box of plastic disposable baby bottle inserts. These could be heat-sealed and used as containers for powdered drugs. A locked bank bag in one of the drawers contained syringes. The room also contained a safe, which Anthony unlocked on request. It contained $760.00 in cash. Anthony testified the cash was kept to buy tools at auctions for his new shop.

A ledger sheet was found on Anthony's bedroom table with names, dollar amounts, and figures representing individual sales of one-quarter to one gram of cocaine. Anthony admitted the sheet was his account of drug transactions, but declared it was over nine months old and had been made in April of 1985, before his first drug arrest. (His home had never been searched before; his first arrest was for cocaine found on his person.) The three subtotals shown on the sheet, marked "PD," totaled $760.00, the amount found in the safe.

Inks pled guilty to possession in a separate action. It was her first drug conviction, and she so testified to the jury in this case. Charges against Jeffrey Inks were dropped in return for his promise to testify against Anthony, but he died before trial, a victim of an alleged murder. The jury ultimately considered two charges against Anthony. The first was listed in count one of the complaint. It charged Anthony did "willfully, intentionally and feloniously possess or, in the alternative, possess with intent to sell, cocaine . . . in violation of K.S.A. 65-4127a." The second charge in the complaint was possession of marijuana, K.S.A. 1986 Supp. 65-4105(d). Anthony was convicted only of possession of cocaine.

The first issue to be considered is whether the trial court erred in not requiring the State to elect whether it relied on possession of cocaine or on possession with intent to sell. K.S.A. 65-4127a reads as follows:

"Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture, possess, have under his control, possess with intent to sell, sell, prescribe, administer, deliver, distribute, dispense or

compound any opiates, opium or narcotic drugs. Any person who violates this section shall be guilty of a class C felony, except that, upon conviction for the second offense, such person shall be guilty of a class B felony, and upon conviction for a third or subsequent offense, such person shall be guilty of a class A felony, and the punishment shall be life imprisonment."

Anthony contends the complaint was duplicitous and therefore defective and could only be remedied by the State's election of either possession or possession with intent to sell. See *State v. Hammond*, 4 Kan. App. 2d 643, 609 P.2d 1171, *rev. denied* 228 Kan. 807 (1980).

Anthony asked for such an election several times before and during the trial. At the end of the testimony, the State offered to rely only on possession with intent to sell. But the trial court decided that, as the jury did not hear the actual complaint and would be instructed it could not convict on both charges, the State was not required to elect on which charge it would rely.

The court indicated the jury would not be confused because of the instruction it proposed to give, which provided as follows:

"The defendant is charged with a crime in violation of the Uniform Controlled Substances Act of the State of Kansas as it pertains to a narcotic drug known as cocaine. The defendant pleads not guilty.

"To establish the charge, each of the following claims must be proved:

"1. That the defendant possessed a narcotic drug known as cocaine;

"2. That the defendant did so with the intent to sell it; and

"3. That the defendant did so on or about the 3rd day of January, 1986, in Barton County, Kansas.

"The Offense of possession of cocaine with the intent to sell includes the offense of possession of cocaine in violation of the Uniform Controlled Substances Act of the State of Kansas. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant possessed a narcotic drug known as cocaine.

"2. That the defendant did so intentionally; and

"3. That the defendant did so on or about the 3rd day of January, 1986, in Barton County, Kansas.

"You may find the defendant guilty of possession of cocaine *or* guilty of possession with the intent to sell cocaine. You may not find him guilty of both of these charges.

"You may find the defendant not guilty of both possession and possession with the intent to sell.

"You may find the defendant guilty of possession and not guilty of possession with the intent to sell. You may not find the defendant guilty of possession with the intent to sell and not guilty of possession. If you find the defendant guilty of possession with the intent to sell then you should *not* execute Verdict 2."

A complaint which charges two separate and distinct offenses in a single count is duplicitous. See *Hammond,* 4 Kan. App. 2d at 646-47. The question here is whether two offenses were charged in count one of the complaint, which stated:

"That on or about the 3rd day of January, 1986, the said BILLY JOE ANTHONY, within the above and within named County and State, then and there being, did then and there contrary to the statutes of the State of Kansas unlawfully, willfully, intentionally and feloniously possess or, in the alternative, possess with intent to sell, cocaine, a narcotic drug, after being previously convicted of possession of cocaine on September 9, 1985, in Barton County, Kansas, in violation of K.S.A. 65-4127a."

Possession of cocaine is an included offense of possession of cocaine with intent to sell. See *State v. Brown,* 5 Kan. App. 2d 149, 150, 613 P.2d 387 (1980). It is necessary to prove all the elements of possession in order to prove possession with intent to sell. Simple possession is not a *lesser* included offense, however, because both offenses are found under the same statute, are of the same degree, and carry the same penalty. *State v. Newell,* 226 Kan. 295, 297, 597 P.2d 1104 (1979).

The State asserts the count was not duplicitous because it did not charge Anthony with two distinct and separate crimes. Instead, it charged him with violation of K.S.A. 65-4127a of the Uniform Controlled Substances Act, which can be violated by various means, all bearing the same penalty, including possession and possession with intent to sell. Obviously, the better practice is to charge the alternative charges in separate counts. See *State v. Saylor,* 228 Kan. 498, 503-04, 618 P.2d 1166 (1980). This prevents any possible confusion. But, it is clear Mr. Anthony was apprised of the offenses against which he would have to be prepared to defend. The jury could not have been confused by the complaint because it did not see it. It only saw the instructions, and it was specifically instructed it could not find the defendant guilty of both possession and possession with intent to sell.

Duplicitous charging is bad practice for two reasons: It confuses the defendant as to how he must prepare his defense and it confuses the jury. Two offenses charged in the alternative in one count contain the same defects as the charging of two separate offenses in one count. In this case, however, the practice was

rendered harmless because it caused neither the defendant nor the jury confusion.

Also, the record shows beyond a reasonable doubt the verdict would not have been different had the court required the State to elect. See *State v. Bell,* 239 Kan. 229, 235, 718 P.2d 628 (1986). The State informed the court it was prepared to rely on possession with intent to sell. Had the trial court permitted the election, the State would have requested an instruction on possession with intent to sell. Pursuant to *State v. Brown,* 5 Kan. App. 2d at 150, the court would have instructed as requested and could have instructed also on possession as an included offense. Thus, we see that a jury may be instructed on simple possession as well as possession with intent to sell even though the defendant was only charged with intent to sell. The end result would have been an instruction exactly like that actually received by the jury in this case. We hold the charging of two offenses in the alternative in one count of the complaint was error, but in this case the error was harmless.

The second issue to be considered on appeal is whether the trial court erred in giving, over Anthony's objection, an accomplice instruction to the jury. The trial court has discretion in giving instructions to the jury. We will approve the instructions· if, when considered in their entirety, they fairly state the law as it applies to the facts of the case. *State v. Armstrong,* 238 Kan. 559, 563-64, 712 P.2d 1258 (1986).

The instruction complained of reads in pertinent part:

"An accomplice witness is one who testifies that he was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice." See PIK Crim. 2d 52.18.

This instruction must be read in conjunction with the following portion of the court's first instruction:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

PIK Crim. 2d 52.18 is normally requested by a defendant when accomplice testimony is being used against him. See, *e.g., State v. Moody,* 223 Kan. 699, 702-03, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978). Anthony contends such an instruction should

not have been given over his objection, especially because the court did not add the limitation formerly contained in PIK Crim. 2d 52.18, that the testimony should be questioned *if not supported by other evidence.* Anthony corroborated Inks' testimony. The police officers corroborated Inks' testimony that she immediately claimed the drugs as hers.

In *State v. Reidie,* 142 Kan. 290, 291-92, 46 P.2d 601 (1935), a witness testified at trial, as did Inks here, that he was guilty of the crime with which the defendant was charged. But, rather than exonerating the defendant, the witness did the more usual thing and implicated him. This court approved the trial court's instruction that whether or not a person is an accomplice is a question of fact to be determined by the jury. We held that "[u]nless the facts establishing complicity of a defendant with a witness in commission of a crime are admitted by defendant, or are otherwise beyond dispute, the question whether the witness was an accomplice is one of fact to be determined by the jury from the evidence." 142 Kan. 290, Syl. ¶ 2.

The trial court in this case noted *Reidie,* but found the relevant phrase to be "or are otherwise beyond dispute." It found it beyond dispute that Inks was "involved in the commission of the crime with which the defendant is charged." This is clearly correct. But *Reidie* required the complicity of the *defendant* to be beyond dispute.

The question, then, is whether the definition of "accomplice" in the instruction can override the prejudice caused by the average juror's belief that such a term, as it normally does, connotes two parties "equally concerned in the commission of crime." Black's Law Dictionary 16 (5th ed. 1979). If the jurors still retained this definition of accomplice in their minds, the court's instruction, which in effect required that Inks be termed an accomplice, may have prejudiced Anthony before the jury. See *State v. Begyn,* 34 N.J. 35, 54-56, 167 A.2d 161 (1961). The jury knew Inks was guilty; it was instructed she was an accomplice; ergo, Anthony must also be an accomplice and must also be guilty.

The State argues, however, that the rationale for giving an accomplice instruction—that the testimony is considered to be inherently unreliable—makes it proper for a court to use its

discretion to give the same instruction when requested by the State. In this case, Inks had already been convicted. She therefore had nothing to lose and much to gain in testifying her husband was innocent.

The question of whether it is improper for a trial court to give an accomplice instruction over the defendant's objection when the accomplice's testimony is *favorable* to a criminal defendant is one of first impression in this state.

In *Cool v. United States*, 409 U.S. 100, 103-04, 34 L. Ed. 2d 335, 93 S. Ct. 354 (1972), a witness pled guilty to the crime for which the defendant was charged, but exonerated the defendant. The United States Supreme Court held the trial court erred in instructing the jury it must ignore the testimony unless it believed it to be true beyond a reasonable doubt. But the Court indicated it would have been permissible for the trial court to have simply instructed the jury to view accomplice testimony with caution.

The Supreme Court cited *United States v. Nolte*, 440 F.2d 1124 (5th Cir.), *cert. denied* 404 U.S. 862 (1971), in which there was evidence a witness for the defense was involved in the same crime for which the defendant was charged. The *Nolte* court, in upholding the trial court's instruction that the witness was "in the category of an accomplice," held a witness is an accomplice if he could have been indicted for the offense with which the defendant is charged. The court upheld the instruction that an accomplice's testimony "ought to be received as suspicious and with the greatest care and caution." 440 F.2d at 1126.

Other federal courts have upheld instructions which cautioned the jury on the weight to be given accomplice testimony favorable to the defendant. *United States v. Urdiales*, 523 F.2d 1245, 1248 (5th Cir. 1975), *cert. denied* 426 U.S. 920 (1976); *Booker v. Israel*, 610 F. Supp. 1310, 1317-18 (E.D. Wis. 1985). In *Booker*, a witness for the defendant testified he had pled guilty to the crime for which the defendant was charged, but exonerated the defendant. The trial court instructed the jury that if the witness' testimony was true, "he participated in the crime charged against the defendant and is an accomplice therein." The federal court upheld the trial court's instruction that accomplice testimony could be the basis of the jury's decision if believed, but should be received with "the utmost care and caution."

The majority rule is that an accomplice instruction is *required* only when the testimony is against the defendant. See *United States v. Rosa*, 560 F.2d 149, 156 (3d Cir.), *cert. denied* 434 U.S. 862 (1977). Most state courts which have considered the question have found cautionary instructions for accomplice testimony favorable to the defendant to be improper. See, *e.g.*, *State v. Gardner*, 51 N.J. 444, 460-61, 242 A.2d 1 (1968); *Com. v. Jones*, 490 Pa. 599, 417 A.2d 201 (1980); *Burns v. State*, 123 Tex. Crim. 213, 221-22, 57 S.W.2d 836 (1933). They variously held that the instruction should be given only at defendant's request, or that the term "accomplice" should be avoided. See generally 23A C.J.S., Criminal Law § 1227.

In *People v. Howard*, 130 Ill. App. 2d 496, 497, 263 N.E.2d 633 (1970), the defendant's witnesses had pled guilty to the crime with which the defendant was charged, but exonerated him in their testimony. Over the objections of the defendant, the trial court instructed:

"An accomplice witness is one who testifies that he was involved in the commission of a crime *with the defendant.* The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (Emphasis added.)

The appellate court held such an instruction was error, in part because of confusion caused when the witnesses testified they did *not* commit the crime "with the defendant," but also because absent the traditional rationale for the instruction—that the witness may hope for favorable treatment by the prosecution in return for disfavorable testimony—the instruction unfairly discredited the defendant's case. 130 Ill. App. 2d 498-99.

In *State v. Anderson*, 104 N.J. Super. 18, 248 A.2d 438, *aff'd* 53 N.J. 65, 248 A.2d 129 (1968), *cert. denied* 394 U.S. 966 (1969), witnesses who had already pled guilty and been sentenced for the crime with which the defendant was charged exonerated the defendant by their testimony. The appellate court upheld the trial court's cautionary instruction, but only because the defendant had not objected to it, the court did not use the prejudicial term "accomplice," and the evidence against the defendant was overwhelming. Despite the appellate court's objection to the

"close scrutiny" the trial court had required in the instruction, the appellate court did find the court had the discretion to remind the jury it "had the right to consider possible motives of loyalty and friendship" in weighing the witnesses' testimony. 104 N.J. Super at 21.

We adopt the minority view that a cautionary instruction on accomplice testimony is proper in all circumstances where an accomplice testifies. Such testimony on behalf of defendants is becoming more prevalent all the time, particularly by spouses or convicted friends of the accused who have nothing to lose by taking the blame. Here, the defendant was not branded as one who committed a crime. The instruction states the accomplice witness is one who testifies he was involved in the commission of the crime "with which the defendant is charged." That is not prejudicial, particularly where the witness testifies she committed the crime and the defendant is innocent.

In addition, we hold the failure to include the limitation formerly contained in PIK Crim. 2d 52.18, that the accomplice testimony should only be questioned if it is not supported by other evidence, was not error. This issue is without merit.

Anthony's final issue is whether there was sufficient evidence to support the verdict. The scope of review for a sufficiency of the evidence challenge is whether the evidence, viewed in a light most favorable to the prosecution, would have persuaded a rational factfinder that the defendant was guilty beyond a reasonable doubt. We look only to the evidence in favor of the verdict to determine if the elements of the charge are sustained. *State v. Willis,* 240 Kan. 580, 587, 731 P.2d 287 (1987).

Anthony contends the State did not prove he had knowledge of and intent to control the cocaine, elements essential to possession. These elements may be proved by circumstantial evidence. See *State v. McKibben,* 239 Kan. 574, 585, 722 P.2d 518 (1986).

However, when the defendant is in nonexclusive possession of the premises on which illegal drugs are found, there must be other incriminating circumstances linking the defendant to the drugs. Whether such circumstances are sufficient to give rise to an inference of possession is a question for the jury. See *State v. Faulkner,* 220 Kan. 153, 160, 551 P.2d 1247 (1976).

A defendant's proximity to the area where the drugs were

found, the fact they were in plain view, the proximity of his belongings to the drugs, and his previous participation in the sale of drugs are factors which have, taken together, been held sufficient to support an inference of possession. See *State v. Faulkner*, 220 Kan. at 160, and *State v. Bullocks*, 2 Kan. App. 2d 48, 50, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978).

The jury was additionally entitled to consider that paraphernalia was found in several different locations of the house in which Anthony lived alone. It was entitled to consider that Anthony admitted the ledger sheet found on the nightstand of his bedroom was a record he had made of his drug sales. The jury could have disregarded Anthony's testimony that the sheet was nine months old and instead believed it was a recent record of the $760.00 Anthony had locked in his safe.

We find sufficient competent evidence to sustain the verdict.

The judgment of the trial court is affirmed.