IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,757

STATE OF KANSAS,
*Appellee*,

v.

MORGAN L. BOESCHLING,
*Appellant*.

SYLLABUS BY THE COURT

1.

A district court judge does not err in answering a jury's question about whether nullification can be applied in a case by saying: "You took the oath as jurors at the start of the case to follow the law in the case that you were instructed by the case." This response did not misinform jurors or coerce them into convicting the defendant.

2.

A district court judge errs by adding a culpable mental state of "knowingly" to a burglary instruction that otherwise includes the correct mens rea of "intent to commit a theft." But the error does not qualify as clear and thus reversible, as it adds to rather than subtracts from the State's burden to prove the defendant guilty beyond a reasonable doubt.

3.

*State v. Anthony*, 242 Kan. 493, 749 P.2d 37 (1988), is still good law. A district court judge may instruct a jury to view an accomplice's testimony with caution even when that testimony is favorable to a criminal defendant.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 29, 2017. Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed February 14, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Andrew R. Davidson*, assistant district attorney, argued the cause, and *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.:  Morgan L. Boeschling and a friend burglarized a restaurant and stole a pickup truck. Police also discovered that Boeschling owned two guns despite being prohibited from owning firearms because of a previous adjudication. The State tried Boeschling for all these offenses in one trial. The jury convicted Boeschling on all counts.

Boeschling appeals, arguing that the district court judge's response to the jury's mid-deliberation question about jury nullification was reversible error. We hold that the judge's response was not error. Boeschling also takes issue with two jury instructions: one defining the elements of burglary and one cautioning the jury about accomplice testimony. We hold that the burglary instruction was erroneous but not reversible; the accomplice instruction was not error. Boeschling's convictions are affirmed.

FACTUAL AND PROCEDURAL HISTORY

When employees came to work at the Bull's Eye Grill in Yoder, Kansas, on the morning of July 28, 2015, they discovered that the restaurant had been burglarized. The cash register was missing; a safe had been broken into; and a bank bag containing about

$600 was gone. The same night that the restaurant was burglarized, a pickup was stolen from a mechanic's shop next door.

The Reno County Sheriff's Office investigated. The State charged Boeschling and Cody Osborn in the case. Osborn pleaded guilty to burglary of the restaurant, theft of the money, and theft of the pickup. Boeschling went to jury trial on charges of nonresidential burglary, felony theft, and two counts of criminal possession of a firearm.

At trial, Detective David Post testified that he posted a still image taken from a security camera near the restaurant on the Reno County Sheriff's Office Facebook page. The image showed two people walking near the restaurant about 1:30 a.m. the night of the break-in. Post asked for the public's help identifying the individuals. Post received tips pointing him to Boeschling and Osborn.

While investigating Boeschling, Post discovered that Boeschling pawned two guns in the weeks before the break-in. Post also learned that Boeschling had a juvenile adjudication that prohibited him from legally owning firearms.

Post interviewed Boeschling. Boeschling admitted that he was pictured in the surveillance footage but declined to identify the other person in the picture. He ultimately admitted that he burglarized the restaurant and stole the pickup from the mechanic's shop. He also told Post that he pawned the two guns.

Osborn, who had already entered his guilty pleas, testified on Boeschling's behalf. He said that he broke into the restaurant by himself, broke into the safe, and took the register; Boeschling came into the restaurant only to get him to stop. Osborn also testified that he was the one who stole the pickup. On cross-examination, he admitted that when Post first interviewed him, he hesitated to admit that Boeschling was with him that night.

3

Boeschling also testified in his defense. He said that Osborn was very drunk the night of the burglary. Boeschling drove the pair to downtown Yoder and parked; the pair wandered around together. According to Boeschling, Osborn then said he had to urinate; so Boeschling watched Osborn walk away by himself. After waiting a period of time, Boeschling noticed that a building's lights were on. Boeschling went into the building and found Osborn trying to open the cash register. Boeschling "got [Osborn] out" of the building and into the car but said he did not realize until he was driving that Osborn had the cash register with him. Boeschling told Osborn he needed to get rid of it, and Osborn threw it out the car window.

The pair went to Osborn's girlfriend's house, where Osborn drank more alcohol. Osborn decided to leave and, rather than letting Osborn drive while drunk, Boeschling drove Osborn back into Yoder. According to Boeschling, Osborn "kept talking about what he wanted to do." Boeschling let Osborn out of the car and left because he "didn't want no part of it." Then Osborn stole the pickup.

Boeschling said that he refused to identify Osborn to Post when interviewed because he did not want to snitch, and he confessed to the burglary and thefts only "because [he] didn't want to see [Osborn] go to jail for being stupid."

Before closings, the State and Boeschling's counsel discussed jury instructions with the district judge. Although neither the State nor Boeschling requested it, the district judge included an accomplice instruction in his packet of proposed jury instructions. The instruction read: "An accomplice witness is one who testifies that he was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice." Boeschling objected to this instruction, arguing, despite caselaw to the contrary, that an accomplice instruction is not appropriate when "the accomplice provides supportive testimony" to the defendant. The district judge overruled Boeschling's objection.

4

The first instruction given jurors informed them that it was the district judge's duty to instruct the jury "in the law that applies to this case, and it is your duty to consider and follow all of the instructions. You must decide the case by applying these instructions to the facts as you find them." The district judge also gave the accomplice instruction to which Boeschling had objected.

The judge instructed the jury on burglary by saying the State must prove:

"1. That Morgan Boeschling knowingly entered or remained within a building, which is not a dwelling . . . ;

"2. That Morgan Boeschling did so without authority;

"3. That Morgan Boeschling did so with the intent to commit a theft therein; and

"4. That this act occurred on or about [the] 28th day of July, 2015, in Reno County, Kansas.

"The elements of theft are set forth in Instruction No. 8.

"The state must prove that Morgan Boeschling committed the crime of burglary knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about."

At no point did Boeschling object to the content or the giving of this instruction.

During deliberations, the jury sent a question to the district judge, asking "can jury nolification [*sic*] be applied to counts #3 and #4?" Counts three and four were the firearms charges. Without objection from the State or Boeschling, the district judge

5

responded: "You took the oath as jurors at the start of the case to follow the law in the case that you were instructed by the case."

The jury convicted Boeschling on all counts. The district judge sentenced Boeschling to 24 months' probation with an underlying sentence of 27 months for burglary, 6 months for theft, and 8 months for each firearm possession count.

Boeschling appealed. A panel of our Court of Appeals found no reversible error and affirmed Boeschling's convictions. *State v. Boeschling*, No. 116,757, 2017 WL 6625546 (Kan. App. 2017) (unpublished opinion). We granted Boeschling's petition for review.

DISCUSSION

*The district judge's response to the jury's nullification question was not error.*

As set forth above, the members of Boeschling's jury asked if nullification can "be applied" to the firearm charges. The district judge responded: "You took the oath as jurors at the start of the case to follow the law in the case that you were instructed by the case." Boeschling asserts that the district judge's answer "affirmatively misinform[ed]" the jury and "clearly implies that jury nullification did not apply."

The State argues for the first time before this court that Boeschling did not preserve this issue for our review. Boeschling asserts that the State cannot contest preservation before us because the State did not argue that point to the Court of Appeals and did not cross-petition the panel's decision reaching the merits of the issue. Boeschling is correct. Under this court's rules in effect at the time the petition for review was submitted, the issue of preservation is not properly before this court. The State failed to argue lack of preservation before the Court of Appeals and failed to cross-petition for

6

review of the Court of Appeals' opinion. See *State v. Brosseit*, 308 Kan. 743, 746-47, 423 P.3d 1036 (2018); *State v. Gray*, 306 Kan. 1287, 1292, 403 P.3d 1220 (2017); Supreme Court Rule 8.03(b), (h)(1) (2018 Kan. S. Ct. R. 53).

This court recently outlined the relevant standards of review for answers to jury questions in *State v. McLinn*, 307 Kan. 307, 341, 409 P.3d 1 (2018):

> "A district court has a 'mandatory duty to respond to a jury's request for further information as to the law of the case,' although '[t]he manner and extent of the trial court's response rest in the sound discretion of the trial court.' . . . .

> "'In deciding whether error occurred, a district court's response to a mid-deliberation jury question is reviewed for abuse of discretion.' . . . In making this determination, we apply an unlimited standard of review to the determination of whether the district court's response was a correct statement of the law—a legal question. 'But when looking at which legally appropriate response the court should have made, [this court] accord[s] the trial court the deference of looking to whether no reasonable person would have given the response adopted by the trial court.' [Citations omitted]."

The party alleging an abuse of discretion has the burden to establish that it occurred. *State v. Garcia*, 295 Kan. 53, 61, 283 P.3d 165 (2012). The State and Boeschling disagree on the harmlessness framework that should apply if an abuse of discretion is shown. Because we ultimately hold that no error occurred, we need not settle their dispute on the harmlessness standard today.

Contrary to Boeschling's argument, the district judge's response to the jury's question did not amount to affirmative misinformation, imply that nullification did not apply, or amount to a warning that nullification would violate the jurors' oaths.

7

The jurors were certainly already aware that they had taken an oath to "return a verdict according to the law and the evidence." K.S.A. 2018 Supp. 60-247(d). And the significant remaining substance of the judge's response merely repeated the correct statement of the law he had already recited at the opening of the jury instructions, i.e., that jurors had a "duty to consider and follow all of the instructions" and "must decide the case by applying these instructions to the facts" they found. The judge did not impermissibly coerce the jury in favor of the State. See *State v. Smith-Parker*, 301 Kan. 132, 163-64, 340 P.3d 485 (2014) (disallowing jury instruction saying, "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty'"; judge cannot compel jury to convict, even if it finds all elements proved beyond reasonable doubt).

Rather, the district judge discharged his mandatory duty to respond to the jury's question with a legally correct answer. See *McLinn*, 307 Kan. at 341. And the only legally correct response was not, as Boeschling asserts, "yes." In fact, answering "yes" would have run afoul of this court's long-stated rule that juries cannot be instructed on nullification.

In *State v. McClanahan*, 212 Kan. 208, Syl. ¶ 4, 209, 510 P.2d 153 (1973), this court held that an instruction that jurors are "'entitled to act upon [their] conscientious feeling about what is a fair result in this case and acquit the defendant if you believe that justice requires such a result'" was never appropriate. We said:

> "Although it must be conceded that the jurors in a criminal case have the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant, it is the proper function and duty of a jury to accept the rules of law given to it in the instruction by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon." 212 Kan. at 217.

8

And we further noted that "power is one thing and proper function and legal duty is another. The jury's legal duty to act 'according to the law' is clearly set forth in the statutory oath administered to every juror." 212 Kan. at 214.

In the forty-plus years since *McClanahan*, this court has continued to issue rulings consistent with it. See *State v. Boothby*, 310 Kan. 619, 630, 448 P.3d 416 (2019) ("[J]uries have 'the raw physical power' to nullify, or disregard, the law . . . [b]ut . . . we have long held that an instruction telling the jury that it may nullify is legally erroneous."); *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 (2011) (defendant not entitled to have jury instructed on power of nullification). "[A] district court does not err when it tells a jury to follow the law." *Boothby*, 310 Kan. at 632. Further, "telling a jury to follow the law does not prevent the jury from exercising its raw power to nullify." 310 Kan. at 632.

The district judge's response to the jury question in this case was not error.

*The burglary instruction was erroneous but not reversible.*

The standard of review for jury instruction challenges is a familiar one:

> "'When analyzing jury instruction issues, an appellate court follows a three-step process by: (1) Determining whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal. . . . Whether a party has preserved a jury instruction issue affects the reversibility inquiry at the third step . . . see also K.S.A. 2015 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.") . . . .

"'At the second step, [the court] consider[s] whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record.' [Citations omitted.]" *State v. McDaniel*, 306 Kan. 595, 614, 395 P.3d 429 (2017).

Boeschling concedes he did not object to the wording of the burglary instruction in the district court. Under K.S.A. 2018 Supp. 22-3414(3), the clear error framework applies when a party fails to object to an instruction below but claims that instruction is error on appeal. Boeschling, however, contends that the district judge failed "to accurately instruct the jurors on the essential elements of the crime." Thus, he argues that the constitutional harmless error framework should apply. He cites *State v. Richardson*, 290 Kan. 176, 183, 224 P.3d 553 (2010), for the proposition that "failure to include elements of instruction [is] subject to constitutional harmless error test, even where not objected to below."

The problem with Boeschling's argument on the harmlessness standard is that the district judge did not fail to include the correct mens rea element of burglary in this case. The instruction accurately stated that the jury must find that Boeschling entered the building "with the intent to commit a theft" inside. This is what the charged crime of burglary required. K.S.A. 2015 Supp. 21-5807(a)(2) (burglary defined as "without authority, entering into or remaining within any: . . . building . . . or other structure which is not a dwelling, with intent to commit a . . . theft . . . therein"). We also note that the district judge correctly defined "intentionally" in the theft instruction regarding the pickup. He stated: "A defendant acts intentionally when it is the defendant's desire and conscious objective to do the act complained about by the [S]tate." See K.S.A. 2018 Supp. 21-5202(h).

The error in the district judge's burglary instruction was not under-inclusion but over-inclusion. In addition to setting out the culpable mental state requirement explicitly provided for in the defining statute, his burglary instruction also stated that Boeschling must have "knowingly" entered the building and that the State must prove that he

10

"committed the crime of burglary knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about." Putting aside for the moment as uncontested today whether a person committing what is alleged to be a burglary must be aware he or she is unauthorized to enter or remain inside a building, see *State v. Murrin*, 309 Kan. 385, 398, 435 P.3d 1126 (2019) (analyzing criminal trespass), we observe that the statute defining the burglary does not explicitly include a "knowingly" requirement of any kind. Thus we hold that the judge's insertion of "knowingly" into the burglary instruction was legally inappropriate.

Still, this mistake does not merit reversal as clear error. Although knowledge is a lesser culpable mental state than intent, see K.S.A. 2018 Supp. 21-5202(b), the inclusion of "knowingly" twice in the burglary instruction in this case actually added to the State's burden to prove guilt beyond a reasonable doubt. There was no harm done to Boeschling or his defense; if anything, the district judge gave him an unwitting, if ultimately unsuccessful, assist.

*The accomplice instruction was not error.*

The three-step standard of review stated at the outset of our discussion of the preceding issue applies to this issue as well. First, this court looks to preservation; then legal and factual appropriateness; and, finally, reversibility. *McDaniel*, 306 Kan. at 614.

Here, Boeschling preserved this issue for this court's review because he objected to the district judge's accomplice instruction. See *State v. Salary*, 301 Kan. 586, 592, 343 P.3d 1165 (2015). Thus, if this court concludes there was error, the State must persuade us that "'there is no reasonable probability that the error will or did affect the outcome of the trial.'" 301 Kan. at 599.

11

Boeschling asserts that the district judge's sua sponte accomplice instruction was "inappropriate" but does not specify whether he believes it to have been factually inappropriate, legally inappropriate, or both.

A brief recap of the relevant factual and procedural history: In his interview with Post, Boeschling confessed to committing both the theft of the pickup and the burglary of the restaurant. He refused to identify the other individual seen in the security footage with him. Despite his refusal, the State charged both Boeschling and Osborn with the burglary and theft. Osborn pleaded guilty to burglary of the restaurant, theft of the money, and theft of the pickup. Once Boeschling reached trial, he recanted his earlier confession—testifying that he did not participate in Osborn's crimes. Likewise, Osborn testified that he acted alone and that Boeschling entered the restaurant only to make him stop. He admitted that, like Boeschling, when first interviewed by Post he refused to identify Boeschling as the other man in the security footage.

The district judge instructed the jury that "[a]n accomplice witness is one who testifies that he was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice." This instruction was taken verbatim from PIK Crim. 4th 51.090 (2014 Supp.).

Boeschling contends that "[l]abeling Osborn as an accomplice after the jury received information that he had committed and pled guilty to the same crimes heavily prejudiced" Boeschling because it "label[ed] the convicted criminal [as] his 'accomplice'" and "attached an inference that the statements were suspect."

This court addressed Boeschling's precise concern in *State v. Anthony*, 242 Kan. 493, 498, 749 P.2d 37 (1988).

In that case, defendant Billy Joe Anthony challenged the district judge's decision to give the same accomplice instruction with respect to Anthony's girlfriend's testimony, which had been favorable to him. Anthony had been charged with felony cocaine possession. Before his trial, his girlfriend had pleaded guilty to possession of the same drugs in a separate case. The girlfriend testified in Anthony's trial that the drugs police had found in Anthony's study were hers and that Anthony knew nothing about them.

This court elected to adopt what it identified as a minority position and held that a "cautionary instruction on accomplice testimony is proper in all circumstances where an accomplice testifies." 242 Kan. at 502. The opinion further observed that "[s]uch testimony on behalf of defendants is becoming more prevalent all the time, particularly by spouses or convicted friends of the accused who have nothing to lose by taking the blame." 242 Kan. at 502.

The *Anthony* decision also expressly considered whether the instruction's use of the term "accomplice" prejudiced the defense. We noted that the average juror may believe that the term "accomplice" "connotes two parties 'equally concerned in the commission of crime.'" Because the jury "knew [his girlfriend] was guilty [and] it was instructed she was an accomplice," the average juror might believe "Anthony must also be an accomplice and must also be guilty." 242 Kan. at 499. Nevertheless,

> "the defendant was not branded as one who committed a crime. The instruction states the
> accomplice witness is one who testifies he was involved in the commission of the crime
> 'with which the defendant is charged.' That is not prejudicial, particularly where the
> witness testifies she committed the crime and the defendant is innocent." 242 Kan. at 502.

*Anthony* is still good law. See *State v. Smith*, 296 Kan. 111, 127-29, 293 P.3d 669 (2012) (citing *Anthony*; accomplice instruction appropriate despite defendant's objection that it "created a negative inference regarding the testimony of [other, nonaccomplice

13

witnesses] in this trial," leading jury to conclude testimony of other witnesses, including nonaccomplice jailhouse informants, "should *not* be weighed with caution"). Boeschling's heavy reliance on a Court of Appeals panel's unpublished decision in *State v. Swarthout*, No. 94,823, 2007 WL 2377084, at *3 (Kan. App. 2007), is wholly unpersuasive. The *Swarthout* decision, which stated that a district judge's sua sponte accomplice instruction would have been inappropriate in different circumstances, did not mention *Anthony* or acknowledge its binding precedential value.

There was no error in the giving of an accomplice instruction in this case. It was legally appropriate under *Anthony*. It was also factually appropriate because both Boeschling and Osborn testified that they were friends; both admitted lying to the police or concealing information from them on one another's behalf; and Osborn had already pleaded guilty to the theft and burglary, the same crimes on which Boeschling stood accused.

CONCLUSION

For all of the reasons detailed above, defendant's convictions are affirmed.

HENRY W. GREEN, JR., J., assigned.[1]

STEVE LEBEN, J., assigned.[2]

---

[1]**REPORTER'S NOTE:**  Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 116,757 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

[2]**REPORTER'S NOTE:**  Judge Leben, of the Kansas Court of Appeals, was appointed to hear case No. 116,757 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.