(288 P.3d 858)
No. 105,534

STATE OF KANSAS, *Appellee*, v. RUDY DELAROSA, *Appellant*.

Opinion filed October 26, 2012.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Brett Watson*, assistant county attorney, *John P. Wheeler, Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREENE, C.J., GREEN and BUSER, JJ.

BUSER, J.: Rudy Delarosa appeals from his conviction by a jury of possession of marijuana and/or its primary active ingredient tetrahydrocannabinol (THC). We affirm the conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

At about 9:30 in the evening on June 4, 2009, Garden City Police Officer Clint Brock was on patrol with Officer Jason Chase in Garden City, Kansas. The officers drove to the 200 block of Washington Street to serve a curfew citation. Upon their arrival, the officers walked through an alleyway toward the residence where they intended to serve the citation. Each officer was dressed in his "street gang unit uniform" with pistol, flashlight, and taser.

As Officer Brock walked toward the residence, he was observed by a man standing at the end of the alleyway. The man began to whistle. Officer Brock ran towards the end of the alleyway, around a building, and onto Washington Street. There, the officer saw

seven or eight people standing around a blue vehicle. The area was known for gang activity and illegal narcotics.

As Officer Brock approached the group, he observed something suspicious—Delarosa "tossed something behind him into the grass." In particular, Officer Brock testified that Delarosa was looking at him when "[h]e turned to the side and tossed an object behind him." The item landed about 2 to 5 feet behind Delarosa. The officer asked Delarosa what he had just thrown, and Delarosa responded, "A roach." According to Officer Brock, the term "roach" means "the last little bit of a marijuana cigarette that they're not able to, I guess, ingest without burning themselves or— swallowing. *A very small bit of marijuana.*" (Emphasis added.) Later that evening, Delarosa told Officer Burke that "earlier" he had "smoked marijuana, but that he didn't have any on him."

Officer E. J. Ochs arrived at the scene, and Officer Brock asked him to search the grassy area where Delarosa had thrown the "roach." During his search of that area Officer Ochs discovered a blue metallic pipe. According to Officer Brock, this type of pipe is "commonly used for smoking marijuana." At the scene, no one claimed ownership of the pipe. Of note, the vehicle Delarosa was standing beside at the time he encountered Officer Brock contained a plastic baggy of marijuana.

Delarosa was charged with possession of "a hallucinogenic drug . . . Marijuana and/or its active ingredient Tetrahydrocannabinol, a Schedule I drug as listed in K.S.A. 65-4105(d)(16) and (24)," and possession of drug paraphernalia, a class A nonperson misdemeanor.

Delarosa's case proceeded to a trial by jury. At trial, Harold Riddle, a chemist with the Kansas Bureau of Investigation (KBI), testified that he conducted several forensic tests on the blue metallic pipe recovered by Officer Ochs. According to Riddle, he performed these tests "looking for components of marijuana, and specifically tetrahydrocannabinol." As a result of the testing, Riddle "detected tetrahydrocannabinol, or THC, which is the active ingredient of marijuana, in the residues [*sic*] of the pipe." In Riddle's opinion, the metal pipe tested positive for THC.

The jury found Delarosa guilty of possession of marijuana and/ or its active ingredient THC. Delarosa was found not guilty, however, of possession of drug paraphernalia. He was sentenced to 14 months' imprisonment but granted a 12-month probation.

Delarosa appeals.

### SUFFICIENCY OF THE EVIDENCE

For his first issue on appeal, Delarosa contends: "The testimony at trial proved only possession of THC and not marijuana; thus, there was insufficient evidence to sustain Mr. Delarosa's conviction."

" ' "When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." ' [Citation omitted.]" *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011).

On appeal, Delarosa cites the expert testimony of Riddle that THC was, in fact, found in the pipe: "[T]he chemist testified only that he tested for and found THC." We agree that this expert testimony was direct evidence sufficient to prove the State's claim that Delarosa possessed THC.

The question then becomes: Was there sufficient evidence produced at trial to prove that Delarosa possessed marijuana? Delarosa responds in the negative, arguing that Riddle "did not testify that he tested for or found marijuana." The crux of Delarosa's argument is that the jury "could not have found the defendant guilty of possession of marijuana, because there was absolutely no evidence presented at trial to prove that Mr. Delarosa possessed marijuana."

Contrary to Delarosa's argument, whether Riddle specifically testified that he tested the pipe for marijuana is not determinative of this question on appeal. In considering the sufficiency of proof of a conviction, we consider *all* the evidence, both direct and circumstantial. Moreover, "[a] conviction of even the gravest offense ' "can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom." ' [Citation omitted.]" *McCaslin*, 291 Kan. at 710. As a result, we have carefully reviewed the entire

trial record to ascertain whether sufficient evidence existed to prove that Delarosa possessed marijuana.

At trial, Riddle testified as follows:

"On [the blue metallic pipe], the tests which I performed were to first take an extract of the residues [*sic*] in the pipe by using a solvent, in this case petroleum ether. And then the extract, it was actually divided into three different samples for three separate tests. I performed a thin-layer chromatography test, a Duquenois-Levine, or a color test, and then also a gas chromatography mass spectrometry test, all looking for components of marijuana, and specifically tetrahydrocannabinol."

Riddle also testified that he "detected tetrahydrocannabinol, or THC, which is the active ingredient of marijuana, in the residues [*sic*] of the pipe." Thus, the uncontroverted expert testimony established that the THC found in the pipe's residue was a "component" or "ingredient" of marijuana. This expert testimony established the intrinsic relationship between THC and marijuana—that THC is one of the primary active ingredients of marijuana.

The State emphasizes this analysis on appeal: "As THC is a component/active ingredient of marijuana, a jury could have reasonably inferred that Delarosa possessed marijuana based on any evidence that he possessed a pipe with THC [residue]." This is essentially the same point the State made to the jury in closing argument:

"As to the first point, that the defendant possessed marijuana. Remember, again, you heard the testimony of a KBI chemist, who said that he had tested this item using scientifically valid tests, and detected THC, which is the active ingredient in marijuana. I think that we can say that that evidence alone establishes beyond a reasonable doubt that there was marijuana in the pipe."

Of course, Riddle's expert testimony was only part of the proof of Delarosa's possession of marijuana. As detailed earlier, the jury was also informed: (1) Delarosa, upon seeing Officer Brock in uniform, tossed an item—apparently the pipe—on the ground; (2) the pipe seized was identified as "commonly used for smoking marijuana"; (3) when specifically asked, Delarosa identified the thrown item as a "roach"; (4) the term "roach" relates to "[a] very small bit of marijuana"; (5) Delarosa admitted (after tossing the "roach") that earlier he had "smoked marijuana, but that he didn't have any on him"; (6) the vehicle Delarosa was standing beside at the time

he initially was confronted by Officer Brock contained a plastic baggy of marijuana; and (7) the area where the vehicle and Delarosa was found was known for gang activity and illegal narcotics.

Given the totality of the expert and lay testimony (including both direct and circumstantial evidence) produced at trial, we are convinced that, " ' "viewed in the light most favorable to the prosecution," ' " a rational jury could have found Delarosa guilty beyond a reasonable doubt of possession of the marijuana contained in the pipe. See *McCaslin*, 291 Kan. at 710.

## ALTERNATIVE MEANS

For his second and related claim of error, Delarosa contends his "right to a unanimous jury verdict was violated because the State alleged, in a single count of the complaint, that the crime could be committed by alternative means—by possessing marijuana, or by possessing THC—and there was not substantial evidence to support possession of marijuana." Jury unanimity is statutorily required in Kansas. K.S.A. 22-3421; *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010).

Delarosa's argument is predicated on the alternative means rule established by our Supreme Court in *State v. Timley*, 255 Kan. 286, 875 P.2d 242 (1994). *Timley* established: " '[W]here a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means.' " 255 Kan. at 289 (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]). In reviewing an alternative means case, an appellate court must determine if a rational trier of fact could have found each means of committing the crime proven beyond a reasonable doubt. *Wright*, 290 Kan. at 202.

For purposes of Delarosa's argument, it is unnecessary to address whether, in fact, the crime of possession of marijuana and/ or its primary active ingredient THC is an alternative means crime. This is because, as detailed earlier, our review of the trial record convinces us that substantial evidence supports both possession of marijuana and THC. As a result, assuming without deciding that

Delarosa has properly identified an alternative means crime, there is no danger of a less than unanimous verdict. Both means that Delarosa allege—possession of marijuana and possession of THC—were proven by substantial evidence such that a rational trier of fact could have found each purported means of committing the crime proven beyond a reasonable doubt. See *Wright,* 290 Kan. at 202.

Finally, our dissenting colleague would reverse and remand the conviction because the criminal charge is duplicitous. Our colleague conducts this appellate review and arrives at this judgment while candidly admitting that "neither party addresses the problem with the complaint/information and jury verdict form." *State v. Delarosa,* No. 105,534, slip op. at 9 (Green, J., dissenting). Indeed, in the district court, Delarosa never raised a duplicity challenge and, as a result, the State was not provided an occasion to address this claimed error. Of course, because of Delarosa's failure to complain at trial, the district court never had the opportunity to review the issue, rule on it, and remedy any infirmity. Moreover, on appeal Delarosa is not heard to complain of duplicitous charging, and the State was not alerted to the need to brief the matter.

Two long-standing rules of law underscore that an appellate court should resist the temptation to, *sua sponte,* seek out and discover error when that purported error is not presented to the appellate court. First, issues not raised before the trial court generally may not be raised on appeal. *State v. Warledo,* 286 Kan. 927, 938, 190 P.3d 937 (2008). Second, an issue not briefed by the appellant is deemed waived or abandoned on appeal. *State v. Martin,* 285 Kan. 994, 998, 179 P.3d 457, *cert. denied* 555 U.S. 880 (2008). As Justice Allegrucci once wrote for a majority of our Supreme Court: "We refrain from basing our decision on grounds not addressed by the lower courts or the parties, where the countervailing arguments have not been made and certainly have not been considered." *State v. Ibarra,* 282 Kan. 530, 544, 147 P.3d 842 (2006). Accordingly, whether the charging document was duplicitous is not properly before us for review and decision.

Affirmed.

* * *

GREEN, J., dissenting: I respectfully dissent because I disagree with the majority's holding that the State presented sufficient evidence to sustain Rudy Delarosa's conviction of possession of marijuana and/or its active ingredient, tetrahydrocannabinol (THC).

Delarosa concedes that there was sufficient evidence to show that he possessed THC. Yet, he contends that the evidence was insufficient to convict him of possession of marijuana. The State charged Delarosa with possession of marijuana and/or THC based on a blue metallic pipe discovered by police in a grassy area where Delarosa, along with a group of other people, had gathered around a car.

As the majority notes, the State's chemist testified that the residue recovered from the pipe tested positive for THC. Nevertheless, he did not testify that the substance recovered from the pipe was marijuana. The majority, however, contends that the testimony of the chemist, along with Delarosa's admission that he threw away a "roach," which is commonly referred to as the last bit of a marijuana cigarette, proves that Delarosa possessed marijuana. Yet, the State never introduced any evidence of a discarded marijuana cigarette. Moreover, none of the seven or eight people who had gathered around the car claimed ownership of the pipe.

The majority asserts that because Delarosa was standing in close proximity to a car in which a plastic baggy of marijuana was found, this shows Delarosa's possession of marijuana. The State, however, did not charge Delarosa with possession of the marijuana recovered from the car. The State probably did not charge Delarosa with the marijuana found in the car because he was not the car's owner. The majority also points to the fact that Delarosa had admitted to smoking marijuana earlier as evidence of Delarosa's possession of marijuana. Yet, a person could smoke marijuana and not later be in possession of marijuana or possession of drug paraphernalia. Thus, it would be a logical non sequitur to conclude that because a person previously smoked marijuana, the person would later possess either marijuana or drug paraphernalia. See *State v. Flinchpaugh*, 232 Kan. 831, 834, 659 P.2d 208 (1983) ("Once a controlled substance is within a person's system, the power of the person to

control, *possess*, use, dispose of, or cause harm is at an end. The drug is assimilated by the body."). Similarly, once Delarosa ingested (by smoking) the marijuana into his system, his power to possess the illegal substance was at an end.

The evidence at trial proved possession of only THC, not marijuana; thus, the evidence was insufficient to sustain Delarosa's conviction of possession of marijuana.

My dissent also relates to matters concerning the complaint/information and the jury verdict form. Although neither party addresses the problem with the complaint/information and jury verdict form, it involves a question of duplicitous charges. Duplicitous charging is the joining of two or more distinct and separate offenses in a single count. *State v. Anthony*, 242 Kan. 493, 497, 749 P.2d 37 (1988). The risk behind a duplicitous charge is that a jury may convict the defendant without unanimous agreement on a particular offense.

When Delarosa was convicted, the crime of possession of a hallucinogenic drug was set out under K.S.A. 2008 Supp. 65-4162(a)(3). K.S.A. 2008 Supp. 65-4162(a)(3), in part, read as follows: "(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to possess or have under such person's control: . . . (3) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105 and amendments thereto or designated in subsection (g) of K.S.A. 65-4109 and amendments thereto." K.S.A. 2008 Supp. 65-4105(d)(16) designates marijuana as a hallucinogenic drug. K.S.A. 2008 Supp. 65-4105(d)(24) designates THC as a hallucinogenic drug.

Count 1 of the State's complaint/information charged Delarosa with possession of marijuana and THC:

"That on or about the 4th day of June 2009 in Finney County, Kansas, Rudy Delarosa . . . did unlawfully and intentionally possess, or have under the defendant's control a hallucinogenic drug, to-wit: Marijuana and/or its active ingredient, Tetrahydrocannabinol, a Schedule I drug as listed in K.S.A. 65-4105(d)(16) and (24), in violation of K.S.A. 65-4162(a)(3), Possession of Marijuana, a severity level 4 drug felony."

The jury instructions, which were read into the record by the trial court, differed from the complaint/information because they

referred to only possession of marijuana. The jury instruction for Delarosa's possession charge stated the following:

"The defendant is charged with the crime of unlawfully possessing marijuana. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the defendant possessed marijuana;

2. That the defendant did so intentionally; and

3. That is act occurred on or about the 4th day of June, 2009, in Finney County, Kansas."

But the jury verdict form, which was read into the record by the trial court, followed the language of the complaint/information: "We, the jury, find the defendant guilty of intentionally possessing marijuana and/or its active ingredient, tetrahydrocannabinol, as charged in count I."

Because possession of marijuana and THC are distinct offenses, count one of the State's complaint obviously is duplicitous, *i.e.*, count one charges two separate and distinct offenses in a single count. Therefore, the question here is whether the duplicitous charge was harmless error.

In answering this question, we draw guidance from *Anthony*. In *Anthony*, the defendant appealed from his conviction of possession of cocaine. On appeal, Anthony argued that the State's complaint was duplicitous and therefore defective. The State's complaint charged Anthony as follows:

" 'That on or about the 3rd day of January, 1986, the said BILLY JOE ANTHONY, within the above and within County and State, then and there being, did then and there contrary to the statutes of the State of Kansas unlawfully, willfully, intentionally and feloniously possess or, in the alternative, possess with intent to sell, cocaine, a narcotic drug, after being previously convicted of possession of cocaine on September 9, 1985, in Barton County, Kansas, in violation of K.S.A. 65-4127a.' " 242 Kan. at 497.

Our Supreme Court held that the charging of two offenses in the alternative in one count of the complaint was error, but in that case the error was harmless. 242 Kan. at 497-98. The *Anthony* court determined the error was harmless because the duplicitous charge did not confuse the defendant or the jury. 242 Kan. at 497-98. The *Anthony* court reasoned:

"[I]t is clear Mr. Anthony was apprised of the offenses against which he would have to be prepared to defend. The jury could not have been confused by the complaint because it did not see it. It only saw the instructions, and it was specifically instructed it could not find the defendant guilty of both possession and possession with intent to sell." 242 Kan. at 497.

The duplicitous charge in this case is not harmless error because the facts of this case are distinguishable from *Anthony*. Unlike *Anthony* where the jury did not see the duplicitous charge, the jury here saw the duplicitous charge because it was contained in the jury verdict form. Moreover, unlike *Anthony* where the court specifically instructed the jury that it could not find the defendant guilty of both possession and intent to sell, the trial court in this case did not instruct the jury that it could not find Delarosa guilty of both possession of marijuana and possession of THC.

In fact, the jury instructions do not clarify this confusion. Instead, the instructions cause more confusion. As mentioned earlier, the jury instructions, which were read into the record, do not mention THC. But count one of the State's complaint/information and the jury verdict form contained the duplicitous charge—that Delarosa possessed THC and/or marijuana. The jury instructions, coupled with the jury verdict form, were ambiguous because after the jury was instructed that it had to find whether Delarosa possessed marijuana, the jury verdict form required the jury to determine whether Delarosa possessed marijuana and/or THC. Moreover, this jury verdict form was later signed by the presiding juror, stating the jury's finding of guilt.

The State's decision to use the conjunction "and/or" in its complaint/information adds a great deal of uncertainty to this case. For example, the "and" component in the jury verdict form states that Delarosa was convicted of both possession of marijuana and possession of THC. The "or" component, on the other hand, states that Delarosa was convicted of either possession of marijuana or possession of THC. This sort of vague language is strongly disfavored:

"It is manifest that we are confronted with the task of first construing 'and/or,' that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase, the child of a brain of some one [*sic*] too lazy or too dull to express

his precise meaning, or too dull to know what he did mean, now commonly used by lawyers . . . through carelessness or ignorance or as a cunning device to conceal rather than express meaning . . . ." *Employers Mut. L. Ins. Co. v. Tollefsen*, 219 Wis. 434, 437, 263 N.W. 376 (1935).

Moreover, the Tenth Circuit Court of Appeals had this to say about the conjunction "and/or":

"The government's decision to use the conjunction 'and/or' in the indictment adds a great deal of uncertainty to this case. Such vague language is strongly disfavored. . . . [C]ourts have repeatedly stated when the government uses such ambiguous language in the indictment, the only way to prevent confusion at sentencing and on appeal is to instruct the jury to render a special verdict which reveals on its face which of the criminal objectives it found the government proved at trial. [Citations omitted.]" *United States v. Bush*, 70 F.3d 557, 562 (10th Cir. 1995).

Here, the trial court did not instruct the jury to render a verdict indicating which criminal offense the State had proved. Thus, the use of "and/or" in the complaint/information and jury verdict form is confusing when considered with the jury instructions, particularly the trial court's failure to give an instruction for THC.

In summary, the complaint/information, jury instructions, and jury verdict form should read harmoniously. But they did not. Thus, it is impossible in this case to determine specifically of what offense Delarosa was convicted. As a result, I would reverse Delarosa's conviction and remand the matter for a new trial on the issue of whether he was guilty of possession of marijuana or possession of THC.