NOT DESIGNATED FOR PUBLICATION

No. 116,149

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CLINTON KEITH EVANS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed March 30, 2018. Affirmed in part, vacated in part, and remanded with directions.

*Caroline Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., GARDNER, J., and TIMOTHY L. DUPREE, District Judge, assigned.

PER CURIAM: Law enforcement officers in Ellis County received a report of a domestic dispute at the residence of Clinton Keith Evans between Evans and his live-in girlfriend, Jessica Sain. When officers arrived at the house, Evans—who was naked at the time—drove his car backwards into a tree and fled to his neighbor's house. Officers later arrested Evans and, as they spoke with his roommates, noticed the strong smell of marijuana emanating from his home. After officers obtained a search warrant, they discovered drug paraphernalia with marijuana and THC residue in the bedroom shared by Evans and Sain. A jury later found Evans guilty of possession of marijuana and/or THC. Evans appeals.

1

For the reasons stated below, we affirm Evans' conviction, vacate the BIDS fees, and remand to the district court with instructions to make specific findings pursuant to *State v. Robinson*, 281 Kan. 538, 546, 132 P.3d 934 (2006).

*Factual and Procedural Background*

On the morning of January 31, 2015, Claude Ray Palmer called law enforcement officers in Ellis County and alerted them to a domestic dispute at the residence of Evans and his live-in girlfriend, Sain. Officer Garrett Brenning responded to this call. As Officer Brenning approached Evans' home, he encountered both Palmer and Sain standing by Palmer's vehicle on the side of the road. Sain informed Officer Brenning that she had attempted to leave the house that morning with her four-year-old son, but "Evans wouldn't let her go." Sain then called her stepfather, Palmer, to pick her up, but when Palmer and Sain attempted to leave, Evans "came running out of the house at them, yelling at them, calling them names, pushing [Palmer], [and] hitting his truck."

Officer Brenning testified that as he listened to Sain and Palmer's story, he received another report from dispatch that "Evans was leaving the residence. He was completely naked, he had a knife with him, and that he was leaving the residence in a white car." Officer Brenning then entered the driveway to Evans' residence and immediately observed Evans' "vehicle . . . driving backwards . . . really fast, and then it passed the house, went into what I would call the yard area . . ., hit a tree, and stopped." According to Officer Brenning, Evans then emerged from his vehicle "completely naked" and ran to a neighboring residence. Officer Brenning noted it was "pretty chilly" outside and that there was snow on the ground.

Evans fled to the home of his neighbor and stepmother, Deanna Leiker, who later testified she believed her stepson "was under the influence of something" that morning. Officer Brenning arrived at Leiker's residence a short time later to the sound of yelling

2

from inside the home. After the officer repeatedly knocked on the door, Leiker let him in. Inside the home, Officer Brenning observed Evans on the phone and arrested him. According to Officer Brenning, Evans was "very hyper, excited, delusional. . . . His pupils were very large." As Officer Brenning put Evans in handcuffs, Evans' comments caused Officer Brenning to believe Evans "was under the influence of something."

After arresting Evans, Officer Brenning returned to Evans' residence and interviewed Chasity Farr and Joey Maupin, who rented the basement of Evans' home. Both Farr and Maupin stated they had never seen Evans act the way he acted that morning. Officer Brenning testified that when Farr and Maupin opened a door to the house he "smelled a very strong odor of burnt marijuana coming from the inside." Farr and Maupin consented to a search of their living quarters in the basement, but "[n]othing of significance was located in those areas, and they were allowed to leave." Sain did not consent to a search of the quarters occupied by her and Evans, so Officer Brenning obtained a search warrant.

Detective Scott Braun of the Ellis County Drug Enforcement Unit assisted Officer Brenning in the search of the living area occupied by Evans and Sain. In Evans and Sain's shared bedroom, Detective Braun discovered "black containers which contained marijuana residue[,] . . . a homemade bong, . . . a marijuana grinder, . . . [and a] multicolored glass pipe with marijuana residue in it." Detective Braun testified that the black containers were located on the left side of the bed (later identified as Evans' side) next to Evans' driver's license, while the pipe and grinder were located on the right side of the bed (later identified as Sain's side). Detective Braun sent the glass pipe to the Kansas Bureau of Investigation where it tested positive for THC.

The State charged Evans with possession of marijuana and/or THC—second offense—a severity level 5 drug felony in violation of K.S.A. 2014 Supp. 21-5706(b)(3) and (c)(2)(B), and possession of drug paraphernalia, a class A nonperson misdemeanor in

3

violation of K.S.A. 2014 Supp. 21-5709(b)(2) and (e)(3). For trial purposes, the district court consolidated these charges with those relating to Evans' earlier conduct toward both Sain and Palmer. Evans pled not guilty.

After trial, a jury found Evans guilty of possession of marijuana and/or THC but acquitted him of possession of drug paraphernalia as well as several other crimes unrelated to this appeal. The district court sentenced Evans to a prison term of 24 months with 12 months of postrelease supervision. Evans timely appealed.

*Duplicitous Complaint*

Evans first contends the State's complaint was duplicitous because it contained charges for two separate crimes (possession of marijuana and possession of THC) in a single count. In response, the State first asserts that this issue was not preserved for appeal because it was not raised below. Evans admits he "did not object to the duplicitous charging document," but argues that the question of duplicity "presents a purely legal question, which could potentially be determinative of [his] appeal." Resolution of this issue is our first order of business.

Generally, issues not raised before the district court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are, however, several exceptions to this rule, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Here, neither party disputes that the State's complaint contained charges for possession of marijuana and possession of THC in the same count. Thus, just as Evans

4

argues, the only remaining issue is whether the complaint was duplicitous—a purely legal question that could result in the reversal of Evans' conviction. Therefore, we may review this issue for the first time on appeal.

Whether a complaint is duplicitous is a question of law over which appellate courts exercise unlimited review. *State v. Montidoro*, No. 108,755, 2014 WL 274460, at *7 (Kan. App. 2014) (unpublished opinion).

> "'A complaint which charges two separate and distinct offenses in a single count is duplicitous. Duplicity is the joinder of two or more separate and distinct offenses in the same count, not the charging of a single offense involving a multiplicity of ways and means of action. Duplicitous charging is bad practice because it confuses the defendant as to how he or she must prepare a defense, and it confuses the jury.' [Citation omitted.]" *State v. Daniels*, 278 Kan. 53, 71-72, 91 P.3d 1147 (2004).

Typically, the remedy for duplicity is not dismissal of the count, but instead to require the State to elect the charge on which it will rely. 278 Kan. at 72. However, in cases where the district court never addressed the question of duplicity, appellate courts consider whether the error was harmless. See *State v. Anthony*, 242 Kan. 493, Syl. ¶ 1, 749 P.2d 37 (1988). An error is harmless if "the record shows beyond reasonable doubt that the verdict would not have been different had the court required the State to elect one charge." 242 Kan. 493, Syl. ¶ 1.

Here, count one of the State's amended complaint charged Evans with possessing "an hallucinogenic drug, to-wit: Marijuana, as designated in K.S.A. 65-4105(d)(16) and/or its active ingredient, tetrahydrocannabinol (THC), as designated in K.S.A. 65-4105(h)(1) . . . in violation of K.S.A. 2014 Supp. 21-5706(b)(3)/(c)(2)(B)." The instructions presented to the jury, specifically instruction 7, contained similar language. The State concedes this count and the accompanying jury instruction were duplicitous, so we need only consider whether the State's error was harmless.

5

Evans claims the duplicitous charge of possession of marijuana and/or THC was not harmless error because it confused the jury. He seeks to distinguish this case from *State v. Anthony*, where the Kansas Supreme Court found that the use of duplicitous charges constituted harmless error. 242 Kan. at 497. There, the court reasoned that the jury did not see the duplicitous complaint but only the jury instructions and "was specifically instructed it could not find the defendant guilty of both [crimes]." 242 Kan. at 497. Evans rightly notes such circumstances did not exist here because jury instruction 7 contained the same language that existed in the State's duplicitous complaint, and "the jury was *not* instructed that it could only convict . . . Evans of one of the two possession offenses."

Evans also encourages this court to follow the reasoning of Judge Green's dissent in *State v. Delarosa*, 48 Kan. App. 2d 253, 288 P.3d 858 (2012). In that case, a panel of this court declined to analyze sua sponte whether a complaint charging the defendant of possession of "marijuana and/or its primary active ingredient THC," was duplicitous. 48 Kan. App. 2d at 257. In his dissent, Judge Green stated, first, that the complaint was duplicitous and, next, that this error was not harmless. 48 Kan. App. 2d at 261-62 (Green, J., dissenting). On this second point, Judge Green drew a similar distinction between that case and *Anthony*, pointing out that "the jury here saw the duplicitous charge because it was contained in the jury verdict form." *Delarosa*, 48 Kan. App. 2d at 262 (Green, J., dissenting). Judge Green found the use of "and/or" especially problematic and "add[ed] a great deal of uncertainty to [the] case," noting:

> "[T]he trial court did not instruct the jury to render a verdict indicating which criminal offense the State had proved. Thus, the use of 'and/or' in the [complaint] and jury verdict form is confusing when considered with the jury instructions, particularly the trial court's failure to give an instruction for THC." 48 Kan. App. 2d at 263 (Green, J., dissenting).

Judge Green concluded that use of the duplicitous complaint did not constitute harmless error and that the case should have been remanded for a new trial. 48 Kan. App. 2d at 263 (Green, J., dissenting).

Evans adopts Judge Green's logic and asserts that the use of "and/or" in the State's complaint was not a harmless error. He argues, "[A]s in *Delarosa*, the jury was *not* instructed that it could only convict . . . Evans of one of the two possession offenses . . ., thus making it impossible to determine the offense of which [he] was convicted, and necessitating a new trial."

The State rebuts this argument by stating, "Evans was not prejudiced based on the evidence in this case and the unquestionable fact that THC is the active ingredient in marijuana." To this end, the State emphasizes the testimony of Detective Braun and Alyssa Weeks (a KBI lab technician), who both testified that THC is an active ingredient in marijuana, an assertion Evans did not contest. Because marijuana residue was found in the black containers in Evans' room, and because the glass pipe tested positive for THC, the State argues "[n]o reasonable jury could have convicted him of possessing one [drug], but not the other." In other words, based on the evidence presented at trial, the jury would not have reached a different verdict had it been instructed that it could find Evans guilty of either possession of marijuana or possession of THC, but not both.

In the context of this case, the State's argument is a reasonable one. As already noted, the State presented unrefuted testimony that THC is an active ingredient in marijuana. The jury also heard evidence that Evans' home smelled strongly of marijuana, that Farr and Maupin's portion of the home contained no contraband, and that officers discovered both a glass pipe, which later tested positive for THC, and containers containing marijuana residue in Evans and Sain's shared bedroom. Here, the jury had ample evidence to convict Evans of possession of marijuana *or* possession of THC. To be sure, the use of "and/or" by the State in its complaint and in the jury instruction was not

7

good practice, but this error had no impact on the verdict rendered by the jury. Further, the State's error had no impact on the *sentencing* of Evans. Thus, the erroneous use of a duplicitous complaint by the State was harmless.

*The Identical Offense Doctrine*

Evans next proposes the identical offense doctrine should apply, thereby reducing the severity of his sentence. He reasons "since the offenses of possessing marijuana and THC were identical under the facts of [t]his case, and since a sentence for possessing THC would have resulted in a lesser sentence . . ., he should have been sentenced for misdemeanor THC possession, rather than felony marijuana possession."

Again, Evans did not raise this issue below. Nonetheless, K.S.A. 2017 Supp. 21-6820(e)(3) allows appellate courts to determine if "the sentencing court erred in ranking the crime severity level of the current crime." See *State v. Snellings*, 294 Kan. 149, 151, 273 P.3d 739 (2012).

The basic principle of the identical offense doctrine is that, "'[w]here two criminal offenses *have identical elements* but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision.'" 294 Kan. at 151 (quoting *State v. Cooper*, 285 Kan. 964, 966-67, 179 P.3d 439 [2008]). The Kansas Supreme Court has found there are three circumstances in which offenses may have identical provisions: (1) one offense is a lesser included offense of the other; (2) some provisions in two statutes overlap, the overlapping provisions apply to the charged crime, and the overlapping provisions are identical except for the penalty provisions; and (3) all provisions in two statutes are identical except for the penalty provisions. *Snellings*, 294 Kan. at 152. The identical offense doctrine applies to the second and third of these circumstances. *State v. Campbell*, 279 Kan. 1, 14-15, 106 P.3d 1129 (2005).

8

Evans does not specify whether he believes the second or third circumstance applies here, though the State concedes that the elements for possession of marijuana and possession of THC are identical when applied to the facts of this case. Rather than focusing on the elements of the two crimes, the State contends the identical offense doctrine does not apply because the penalty provisions for possession of marijuana and possession of THC were the same at the time Evans committed the crime.

Resolution of this matter requires us to interpret K.S.A. 2014 Supp. 21-5706 as written on January 31, 2015. See *State v. Kurtz*, 51 Kan. App. 2d 50, 55, 340 P.3d 509 (2014) (citing *State v. Denney*, 278 Kan. 643, 646, 101 P.3d 1257 [2004]) (generally, statutes in effect on date defendant committed crimes govern penalties assessed against defendant). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). Appellate courts must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When a statute is plain and unambiguous, this court should not speculate about the legislative intent behind that clear language and should refrain from reading something into the statute not readily found in its words. 303 Kan. at 813.

In relevant part K.S.A. 2014 Supp. 21-5706 provides:

"(b) It shall be unlawful for any person to possess any of the following controlled substances or controlled substance analogs thereof:

. . . .

(3) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105, subsection (g) of K.S.A. 65-4107 or subsection (g) of K.S.A. 65-4109. . .;

 . . . .

(7) any substance designated in subsection (h) of K.S.A. 65-4105."

9

K.S.A. 2014 Supp. 65-4105(d)(16)—denoting marijuana—corresponds to subsection (b)(3) above, while K.S.A. 2014 Supp. 65-4105(h)(1)—denoting THC—corresponds to subsection (b)(7).

K.S.A. 2014 Supp. 21-5706(c) continues:

> "(2)(A) [V]iolation of subsection (b) is a class A nonperson misdemeanor, except as provided in subsection (c)(2)(B); and
>
> (B) violation of subsection (b)(1) through (b)(5) or (b)(7) is a drug severity level 5 felony *if that person has a prior conviction under such subsection*, under K.S.A. 65-4162, prior to its repeal, under a substantially similar offense from another jurisdiction, or under any city ordinance or county resolution for a substantially similar offense if the substance involved was 3, 4-methylenedioxymethamphetamine (MDMA), marijuana as designated in subsection (d) of K.S.A. 65-4105 . . . or any substance designated in subsection (h) of K.S.A. 65-4105." (Emphasis added.)

Evans acknowledges that the penalties described in subsection (c) "were the same generally," but argues that "different results occur when applied to this case because [he] had a prior marijuana-possession conviction, but no prior THC-possession conviction." Focusing on the portion of K.S.A. 2014 Supp. 21-5706(c)(2)(B) emphasized above, Evans argues that the word "'*such*'" "limited the enhancement provisions to include only prior convictions for the *same* subsection." That is, the crime's severity level could only be elevated if the defendant had a prior conviction for the exact same crime with the exact same drug. Evans concludes that because "a sentence for possessing THC would have resulted in a lesser sentence," the identical offense doctrine applies and his sentence for felony possession should be vacated.

The State responds that "the plain language of [K.S.A. 2014 Supp. 21-5706(c)(2)(B)] does . . . not require a conviction for an identical controlled substance for the enhancement to apply." This interpretation is correct.

10

As Evans notes in his brief, the key phrase from K.S.A. 2014 Supp. 21-5706(c)(2)(B) is "violation of subsection (b)(1) through (b)(5) or (b)(7) is a drug severity level 5 felony if that person has a prior conviction under such subsection." However, Evans' interpretation of this provision is far too narrow. Nothing in the language of K.S.A. 2014 Supp. 21-5706(c)(2)(B) suggests that a sentence could be enhanced only if the defendant's current and prior convictions were for possession of the *exact same* drug. A more reasonable interpretation can be reached with the aid of Black's Law Dictionary 1661 (10th ed. 2014), which defines "such" as: "1. Of this or that kind . . . 2. That or those; having just been mentioned." In the context of K.S.A. 2014 Supp. 21-5706(c)(2)(B), it is clear the term "such" refers not to prior convictions for possession of the same drug, but instead to the subsections just mentioned: "(b)(1) through (b)(5) or (b)(7)." In other words, under K.S.A. 2014 Supp. 21-5706(c)(2)(B), the severity level of a defendant's crime could be enhanced if he or she had a prior conviction for possession of *any drug* referred to in K.S.A. 2014 Supp. 21-5706(b)(1) through (b)(5) or (b)(7).

The practical effect of the above interpretation is that the identical offense doctrine is inapplicable to this case. Because Evans already had a prior conviction for possession of marijuana, a subsequent conviction for possession of marijuana *or possession of THC* necessarily enhanced the subsequent conviction from a class A misdemeanor to a severity level 5 felony. That is, under K.S.A. 2014 Supp. 21-5706(c), the penalty provisions for possession of marijuana and possession of THC were the same. Thus, the identical offense doctrine does not apply.

*Sufficiency of the Evidence*

Evans next contends there was insufficient evidence to convict him of possession of marijuana and/or THC. Specifically, Evans claims the State failed to prove beyond a reasonable doubt that he jointly or exclusively possessed the marijuana and THC found in his bedroom.

11

When a criminal defendant challenges the sufficiency of evidence, appellate courts review all evidence in a light most favorable to the State. This court will uphold a conviction if, based on the evidence presented at trial, it is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). When considering sufficiency, this court does not reweigh the evidence presented at trial or assess the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

For the charges of possession of drugs or drug paraphernalia, "possession" is defined as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2014 Supp. 21-5701(q). This definition requires that the defendant know of the drugs and have some intent to control or right of control of the drugs. *State v. Keel*, 302 Kan. 560, 567, 357 P.3d 251 (2015); *State v. Judd*, No. 112,606, 2016 WL 2942294, at *2 (Kan. App. 2016) (unpublished opinion).

Kansas courts have recognized that the presence of drugs in the common area of a residence occupied by multiple individuals is itself insufficient to convict an occupant of unlawful possession. *Keel*, 302 Kan. at 567-68; *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233 (1991). To prove possession, the State must provide additional evidence that links a defendant to the drugs or paraphernalia. Kansas courts have identified several circumstantial and direct indicia of knowledge and control that could link a defendant to the drugs in question, including: (1) the defendant's past use or sale of drugs; (2) the defendant's proximity to the contraband upon which the charges are based; (3) the location of the contraband in plain sight; and (4) the defendant's incriminating statements or suspicious behavior relating to the contraband. *Keel*, 302 Kan. at 567-68.

Evans draws strong comparisons between this case and *Judd*, in which a panel of this court reviewed evidence of drug contraband found in a living area occupied by

several residents and in a bedroom shared by the defendant and his girlfriend. 2016 WL 2942294, at *1-2. Citing *Judd*, Evans argues there was insufficient evidence to convict him of possession of marijuana/THC because: (1) "Sain had as much access to the contraband as . . . Evans . . . in their shared bedroom and the bulk of the contraband was located on *her* nightstand"; (2) "Evans had not been sleeping in the area where the contraband was discovered . . . but Sain had been"; (3) the "evidence indicated it was more likely the marijuana residue belonged to Sain or one of . . . Evans' roommates"; and (4) "the State failed to introduce evidence that the pipe and residue belonged to . . . Evans at the time of the search."

Although Evans' factual assertions are correct—to an extent—his reliance on *Judd* is completely misplaced and indeed at times appears designed to intentionally mislead this court. For instance, Evans claims the *Judd* panel reversed the defendant's conviction for possession of methamphetamine because "other individuals had the same amount of access to the common area . . .; someone else had actually been living in the area where the contraband was found . . .; and . . . the State's evidence failed to . . . [attribute] the methamphetamine to the defendant." As the State notes in its brief, statements such as the above ignore the nuances of the *Judd* decision.

In *Judd*, law enforcement officers smelled marijuana as they approached the front door of a mobile home. Through the open front door, the officers observed a glass pipe that they suspected was drug paraphernalia. When the officers later searched the house, they discovered a digital scale and glass pipe in the living room, a homemade smoking device in the kitchen, and a grinder in the closet of the bedroom occupied by Judd and his girlfriend. The State charged Judd with possession of the contraband found in the living room, kitchen, and his bedroom. Relying on the indicia described above, this court reversed Judd's conviction relating to the contraband found in the living room and kitchen, noting that Judd's roommates "had access to the common areas of the mobile home to the same extent [he] did." 2016 WL 2942294, at *3. However, this court found

13

there was sufficient evidence to support Judd's conviction relating to the grinder discovered in the bedroom occupied by him and his girlfriend. The court explained:

> "The grinder and the marijuana it contained offer a materially different circumstance than do the contraband in the common areas. Officers found the grinder in a closet in a bedroom Judd and his girlfriend occupied to the exclusion of other residents of the mobile home. That fact was undisputed at trial. . . . The officers appear to have readily found the grinder, supporting the inference that a person simply opening the closet would see it.
> 
> "Accordingly, a factfinder could fairly conclude Judd had knowledge of the grinder and at least common or joint possession of it with his girlfriend. . . . Who owned the grinder is irrelevant. The crime requires *possession* of proscribed items. Simply put, a person does not necessarily own everything he or she possesses . . . . The evidence . . . establishes a sufficient, if thin, basis for upholding Judd's conviction for possession of the marijuana found in the grinder." 2016 WL 2942294, at *4.

Contrary to what Evans argues, *Judd* actually provides the framework for upholding his conviction here. The jury heard testimony from Officer Brenning that he "smelled a very strong odor of burnt marijuana coming from . . . inside" Evans' home. The portion of the home occupied by Farr and Maupin did not contain drug contraband, nor did the common areas of the home. However, in the bedroom shared by Evans and Sain, officers discovered "black containers" with marijuana residue in them on Evans' side of the bed next to his driver's license and "a homemade bong," "a marijuana grinder," and a "multicolored glass pipe" (which later tested positive for THC) on Sain's bedside table. Furthermore, Maupin testified that he gave the glass pipe to Evans "as a gift."

Considering the evidence here, a rational fact-finder could have found Evans guilty of possession of marijuana/THC beyond a reasonable doubt.

14

*Alternative Means*

Leaving no stone unturned, Evans argues, "If this Court disagrees with [his] above-asserted premise that possession of marijuana and possession of THC constitute distinct crimes (Issue I), it should consider whether they are alternate means of committing a single crime." Because the State concedes that its complaint was duplicitous, i.e., contained two distinct crimes in one charge, this panel does not need to delve into an alternative means analysis here.

*Jury Instruction*

Evans next claims the district court erred "by not giving the jury a non-exclusive possession instruction" and that his conviction should be reversed as a result. When reviewing challenges to a district court's jury instruction, Kansas courts follow a multistep analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless . . . . [Citation omitted.]'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

Reviewability concerns this court's appellate jurisdiction and whether the defendant objected to the challenged jury instruction at trial. See *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012). In his brief, Evans does not contest this court's jurisdiction and readily admits he did not request a nonexclusive possession instruction below. When a party fails to object to a jury instruction at trial but challenges that

15

instruction, or the lack thereof, on appeal, this court will review the district court's conduct for clear error. K.S.A. 2017 Supp. 22-3414(3). Evans, then, must "'firmly convince [this] court that the giving of [a different] instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

Step two of this analysis considers the legal and factual appropriateness of a nonexclusive possession instruction, "employing an unlimited review of the entire record." *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012). The State concedes a nonexclusive possession instruction was both legally and factually appropriate in this case.

At trial, the district court provided the following instruction to the jury regarding possession of marijuana and/or THC:

> "The defendant is charged with unlawfully possessing marijuana and/or its active ingredient, tetrahydrocannabinol (THC). The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> "1. The defendant possessed marijuana and/or its active ingredient, [THC].
> "2. This act occurred on or about the 31st day of January, 2015, in Ellis County, Kansas.
> "'Possession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

This instruction follows verbatim the language for possession of drugs or drug paraphernalia found in the Pattern Instructions Kansas (Criminal). See PIK Crim. 4th 57.040 (2016 Supp.). And, the Kansas Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d

16

1108 (2015). However, the most recent PIK does not include an instruction for nonexclusive possession, even though the indicia remain a part of governing law in drug contraband cases. See *Keel*, 302 Kan. at 567-68; *Judd*, 2016 WL 2942294, at *5-6. A nonexclusive possession instruction does exist in PIK Crim. 3d 67.13-D (2009 Supp.). That instruction reads:

"Possession of a controlled substance requires that the defendant have control over the substance with knowledge of and the intent to have such control. To possess a controlled substance, the defendant must have knowledge of the presence of the controlled substance with the intent to exercise control over it. Control means to exercise a restraining or directing influence over the controlled substance.

"(Possession may be immediate and exclusive, jointly held with another, or constructive.) (Joint possession occurs when two or more persons, who have the power or control and intent to manage property, exercise the same jointly.) (Constructive possession is knowingly keeping a controlled substance in a place to which the defendant has some measure of access and right of control.)

[When a defendant is in nonexclusive possession of (the premises upon) (an automobile in) which a controlled substance is found, it cannot be inferred that the defendant knowingly possessed the controlled substance unless there are other circumstances linking the defendant to the controlled substance. You may consider the following factors in determining whether the defendant knowingly possessed the controlled substance, if you find they are supported by the evidence:

"1. whether the defendant previously participated in the sale of a controlled substance;

"2. whether the defendant used controlled substances;

"3. whether the defendant was near the area where the controlled substance was found;

"4. whether the controlled substance was found in plain view;

"5. whether the defendant made any incriminating statements;

"6. whether the defendant's behavior was suspicious; and

"7. whether the defendant's belongings were near the controlled substance.]" PIK Crim. 3d 67.13-D.

17

Addressing this same issue, in *Judd* the court determined that the above instruction was both legally and factually appropriate. 2016 WL 2942294, at *5-6. The court noted that, in a case where more than one person had access to the drug contraband, an instruction that only followed PIK Crim. 4th 57.040 "fail[ed] to explain in clear terms that Kansas law requires more than the contraband be in a common area of a place to which the defendant and others have access to satisfy the legal requirements for possession." 2016 WL 2942294, at *6.

Considering that this case is nearly identical to *Judd*, a nonexclusive possession instruction was warranted and should have been given to the jury. Drug contraband was found in a room occupied by both Evans and Sain and on both sides of their shared bed. As given, the district court's jury instructions did not help the jurors understand the concept of possession.

Despite the above oversight, the district court did not commit clear error when it failed to include a nonexclusive possession instruction. As already noted, clear error exists only where this court is "firmly convince[d] . . . that the giving of [a different] instruction would have made a difference in the verdict." *Cooper*, 303 Kan. at 771.

Evans again relies heavily on *Judd*, arguing that the jury "had no way of knowing that it could not infer that he knowingly possessed drugs based solely upon the discovery of those items in the room he shared with [Sain]." He suggests that the lack of a nonexclusive possession instruction explains the apparent inconsistency in the jury's determination that he possessed marijuana/THC but did not possess the paraphernalia that contained these drugs.

Once again, Evans' reliance on *Judd* is misplaced. There, the panel similarly determined the district court erred when it failed to provide a nonexclusive possession of marijuana instruction to the jury. 2016 WL 2942294, at *6. The panel found this

18

oversight constituted clear error regarding the drug contraband discovered in the common area of Judd's home, but determined there was no clear error relating to the drugs found in the bedroom shared by Judd and his girlfriend. 2016 WL 2942294, at *6-7. It reasoned:

> "The circumstantial evidence pointing toward Judd's possession of the grinder (and the marijuana), perhaps jointly with his girlfriend, is somewhat stronger. While an instruction on the indicia of possession almost certainly would have aided the jurors in their consideration of [the charge for possession of marijuana], we are not firmly persuaded the outcome would have been different. It would have been a better informed outcome but not necessarily a different one. . . . [W]e decline to reverse the conviction for possession of marijuana on this point." 2016 WL 2942294, at *7.

We agree. The rationale employed by the *Judd* panel should be applied here. As in *Judd*, the evidence presented to the jury here suggested that Evans possessed the marijuana/THC at least jointly with Sain in their shared bedroom. Officers discovered paraphernalia containing drug residue on both sides of Evans and Sain's bed, so even without a nonexclusive possession instruction a jury could infer that Evans possessed the drugs found in his room. Certainly, a nonexclusive possession instruction would have provided clarity to the jury's findings, but Evans provides no real explanation of how such an instruction would have influenced the outcome of this case. Because there was no clear error here, Evans' conviction for possession of marijuana will stand.

*Prosecutorial Misconduct—Comment on Witnesses' Credibility*

Evans next contends the State prosecutor "reversibly erred" during closing arguments. Specifically, Evans argues the prosecutor "improperly commented on the credibility of the witnesses and [his] guilt" and "misstat[ed] the law of possession." Once again, Evans did not object to the prosecutor's statements during his trial. Nevertheless, out of an abundance of caution, and out of respect to the seriousness of a criminal conviction, this court will review all comments made during closing arguments that are

19

not evidence, even when a contemporaneous objection was not made at the trial level. See *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012).

When reviewing a question of prosecutorial misconduct, Kansas courts engage in a two-step analysis, which can be described as "error and prejudice." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). In the first step of this analysis

> "[t]o determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduce the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

If the appellate court finds error, it must move to the second step and "determine whether the error prejudiced the defendant's due process rights to a fair trial," using the traditional constitutional harmless error inquiry. 305 Kan. at 109. An error is harmless if the State can demonstrate "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109.

As a general rule, prosecutors are forbidden from offering a personal opinion that a defendant's testimony is untruthful and are similarly prohibited from giving a personal opinion regarding the ultimate guilt or innocence of the defendant. *State v. Brown*, 300 Kan. 542, 560, 331 P.3d 781 (2014); *State v. Peppers*, 294 Kan. 377, 399, 276 P.3d 148 (2012). These statements are disallowed because they "are a form of unsworn, unchecked testimony, not commentary on the evidence of the case." 294 Kan. at 399. But prosecutors are permitted to emphasize inconsistencies in a defendant's statements and argue the evidence reflects poorly on a defendant's credibility. *Brown*, 300 Kan. at 560. Prosecutors are also allowed to argue that the evidence presented proves the defendant's guilt, so long as they add directional language to the statement, such as "the evidence

20

shows the defendant's guilt." *Peppers*, 294 Kan. at 399-400. "The comments are considered in the context in which they were made, not in isolation." *Brown*, 300 Kan. at 560.

Evans takes issue with the following statement made by the prosecutor during the rebuttal portion of the State's closing arguments:

"[Evans] testifies about the knowledge of the marijuana. He testified as to the knowledge. Well, now I think this was more a gift, maybe it was a gift to both of us by Joey Maupin. Joey Maupin testified he gave it to Clinton Evans.

"He knew it was there. He knew it's illegal. He knows it's in the bedroom. And the marijuana container is on his side of the bed right next to his driver's license, they are not on her nightstand. Of course he knows. And it's joint or exclusive control, joint or exclusive control. He knew it was there in his house in his bedroom and that's possession.

"All five of the witnesses, starting with Claude Ray Palmer, testified the defendant was out of his mind. He was on something. Jessica Sain, I didn't know, he may have even had a nervous breakdown. He was totally out of it on something.

. . . .

"Who possessed the marijuana and the hallucinogenic? Who stayed up all night smoking it? Who was hallucinating that morning when he was interacting with the people? And that's the only way you can reconcile what you heard on those 9-1-1 calls with what he tried to testify to here today. The only way you can put those together is obviously he was hallucinating.

. . . .

"*The defendant is guilty of all six violations based on the evidence that you heard.*

"*It comes down to the credibility. Are you going to believe the five witnesses including his mother who said he was on something? Or the defendant? That's what it comes down to. The five are the believable ones, and the defendant is guilty of all six violations.*

"Thank you." (Emphasis added.)

21

Evans claims the above statement constituted prosecutorial error because "it told the jury the prosecutor's opinion on the witnesses' credibility and on the ultimate issue of [his] guilt." However, in his effort to persuade this panel that the prosecutor's closing statements were erroneous, Evans has cherry-picked small quotes to make the prosecutor's comments appear more egregious than they really were. The record clearly shows the prosecutor did not say, "[t]he defendant is guilty of all six violations," as Evans would have this panel believe, but instead stated: "The defendant is guilty of all six violations *based on the evidence that you heard*." (Emphasis added.) In context, it is evident the prosecutor's statement was merely directional and in no way improper.

Context similarly undermines Evans' claim that the prosecutor made impermissible statements about witness credibility. The prosecutor did not tell the jury "the State's witnesses were truthful and that . . . Evans was not." Rather, the prosecutor emphasized the inconsistencies between Evans' testimony and the testimony of five other witnesses who saw him on the morning of January 31, 2015, and suggested that these discrepancies made the five witnesses more believable. Because the prosecutor did not err, we will not consider whether Evans suffered prejudice.

*Prosecutorial Misconduct—Statement on the Law for Possession of Marijuana/THC*

As one would suspect, a prosecutor may not misstate the law in closing arguments. *State v. Tahah*, 302 Kan. 783, 791, 358 P.3d 819 (2015). Evans alleges the prosecutor erroneously stated the law in the following instances:

> "Instruction No. 7, possession of marijuana. This includes either marijuana, or its active ingredient tetrahydrocannabinol, as was testified to by the KBI Agent Alyssa [Weeks]. 22-A, the glass pipe, tested positive for THC, tetrahydrocannabinol, which she testified was the active ingredient. It is the part of the marijuana that [affects] the mind, causes the hallucination. That's why it's a hallucinogen.

"You have her lab report in 22-B showing you that it's THC, tetrahydrocannabinol.

"You also have the testimony of Scott Braun that in the bong, No. 20, inside No. 21, you can still see stems and seeds of marijuana; inside 23-A and 23-B, marijuana residue which Scott Braun testified to; inside of the grinder, which is 21-C, used to grind a bud down to usable marijuana.

"So you had testimony from Scott Braun, has over 20 years experience with marijuana detection, drug detection in Ellis County, that this was marijuana. You also have the KBI lab report telling you, yes, we tested the pipe, and it does contain THC, tetrahydrocannabinol, the active ingredient.

"Possessed, the bottom paragraph, possession means having joint or exclusive control. We have a divergence of testimony here. Jessica Sain said, I didn't smoke it. That's not mine. Yes, it's on a nightstand in our bedroom; yes, it's even on the side of the bed I sleep on. Ain't my stuff. I left, it wasn't there. When I came back, it's there.

"Defendant is saying oh, it's her stuff, but, you know, I know about it, and I know she's using, and golly gee, I would like to get her to quit using.

"Joint or exclusive control. *By his own testimony, he established joint control over those items. Knowing about them, knowing they are there, knowing about the marijuana. In his bedroom, in his house. And you have heard on both tapes how much he relishes the fact that he lords over everyone there, it's his house. Well, in his house, in his bedroom, is the marijuana.*

. . . .

"But he testifies about the knowledge of the marijuana. He testified as to the knowledge. Well, now I think this was more a gift, maybe it was a gift to both of us by Joey Maupin. Joey Maupin testified he gave it to Clinton Evans.

"*He knew it was there. He knew it's illegal. He knows it's in the bedroom. And the marijuana container is on his side of the bed right next to his driver's license, they are not on her nightstand. Of course he knows. And it's joint or exclusive control, joint or exclusive control. He knew it was there in his house in his bedroom and that's possession.*" (Emphases added.)

Evans argues the above comments were a misstatement of the law for possession of marijuana/THC and again compares this case to *Judd*, where, during closing

23

arguments, the prosecutor repeatedly emphasized that the drug contraband was found inside Judd's home. These statements by the prosecutor, this court found, implied to the jury that Judd was guilty of possession of marijuana simply because the marijuana was found inside his house—a significant misstatement of the law. The *Judd* panel concluded the prosecutor's statements were not just erroneous, but also "gross and flagrant," and reversed Judd's conviction for possession of marijuana. 2016 WL 2942294, at *8-10.

Evans stretches mightily to analogize this case to *Judd*. He argues, for instance, that "the prosecutor repeatedly discussed . . . Evans' ownership of the house as a reason to find [him] guilty of possession of marijuana." And that, "[a]s in *Judd*, the prosecutor improperly indicated to the jury that because . . . Evans owned the home in which the residue was found, he could be liable for possessing the residue merely because it could be inferred that . . . the residue was there." Evans also takes issue with what he considers the prosecutor's misstatement of the law for joint or exclusive possession, stating: "[S]imply because . . . Evans *knew* the marijuana residue was in his house or even in his bedroom does *not* prove that he had joint or exclusive *control* over it."

These arguments do not stand up to the State's counterpoint, which claims that Evans is focusing on only one aspect of the law for possession. K.S.A. 2014 Supp. 21-5701(q) defines "possession" as "having joint or exclusive control over an item with knowledge of and intent to have such control *or knowingly keeping some item in a place where the person has some measure of access and right of control.*" (Emphasis added.) While Evans' argument focuses on the first half of K.S.A. 2014 Supp. 21-5701(q), the State reasons that the prosecutor, in his closing arguments, was referring to the latter portion of the statute. In other words, "that Evans knowingly kept the contraband in a place where he had some manner of access and right of control."

The State's position is more logical, especially when considering the context of the prosecutor's statements. Contrary to what Evans argues, the prosecutor did not imply that

24

Evans was guilty of possession of marijuana/THC because officers found the drugs in his house. Instead, the prosecutor emphasized to the jury that law enforcement discovered the drugs in Evans' bedroom, on either side of his bed, and also noted that Evans himself testified he knew the drugs were there. These statements contrast with those made by the prosecutor in *Judd*, whose closing arguments implied Judd could be found liable simply because drugs were found inside his house. The prosecutor's statements here were consistent with Kansas law. Evans *could* be found liable for possession of the marijuana discovered in his shared bedroom, and thus the prosecutor committed no error.

*Cumulative Error*

Evans also argues that the cumulative effect of the errors alleged above "has deprived [him] of a fair trial." Appellate courts can weigh the collective impact of trial errors and may grant relief if the overall result of the imperfections deprives the defendant of a fair hearing, even when the errors considered individually are harmless. *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). When determining the cumulative effect of trial errors, appellate courts examine the errors as they arose; the nature and number of errors and their relationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). "The test is whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. No prejudicial error may be found under the cumulative error doctrine if the evidence against the defendant is overwhelming." *State v. Hart,* 297 Kan. 494, 513-14, 301 P.3d 1279 (2013).

There are only two errors this panel can consider for a cumulative error analysis: (1) the State's duplicitous complaint and (2) the district court's failure to provide a nonexclusive possession instruction to the jury. The duplicitous complaint was harmless, and the failure to provide a nonexclusive possession instruction would not have made a

difference in the verdict. Furthermore, the overall strength of the evidence shows Evans possessed marijuana/THC. Therefore, there is no cumulative error.

*Assessment of BIDS Attorney Fees*

Finally, Evans contends the district court erred in its assessment of BIDS attorney fees because it "failed to 'meaningfully consider' [his financial] resources so as to comply with K.S.A. 22-4513(b)." This issue requires interpretation of K.S.A. 22-4513(b), which presents a question of law over which appellate courts exercise unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Indigent defendants who are represented by BIDS attorneys must reimburse their attorney fees if they are found guilty. Fee assessments are regulated under K.S.A. 22-4513 and are essentially treated as a civil judgment imposed on a guilty defendant. K.S.A. 22-4513(b) also requires that the district court "take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." District courts must make this determination at the time the fee assessment is ordered and must do so "explicitly, stating on the record how those factors have been weighed in the court's decision." *Robinson*, 281 Kan. at 546.

Following trial, Evans' trial counsel and the district court discussed BIDS attorney fees:

> "[DEFENSE COUNSEL]: I've been splitting [fees] between the two cases. I know one case last I checked was $2,700 and the other one was $1,300. It's going to be, between the two, I will be asking for reimbursement of roughly $4,000.
> "He's going to be in jail for well, 30 months, minus his time, so probably 18 months. He's going to be unemployed when he gets out. I think it would work an undue hardship on him if he had to pay the total amount. I mean if the court were to assess attorney

26

fees, we would ask that the court consider perhaps giving him a reduction or making him pay perhaps the cap limit.

> "THE COURT: That's what I will order. I will order the cap limit in both cases. . . .

> "You only have to pay the cap limit on each case. That will be based on the highest felony . . . the marijuana was the only felony charged . . . .

> . . . .

> "[A] drug tried is $2,600. So he's within the cap for tried cases.

> "[THE STATE]: Total [for both cases] $5,375.

> "THE COURT: And [defense counsel] has talked in the range of $4,000 to $4,500. So it looks like those will be ordered paid. Along with the BIDS application fee of $100 in each case."

The above discussion supports the finding that the district court elicited information regarding Evans' financial circumstance. However, it is clear the court failed to provide an explanation for the BIDS fee amount it ordered and thus ran afoul of *Robinson*. The district court's BIDS order is vacated and remanded for proper consideration.

In sum, we affirm Evans' conviction, we vacate the BIDS fee, and remand to the district court with instructions to make specific findings pursuant to *Robinson*.

27